**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| ELI LILLY AND COMPANY,          ) | |
| ) | |
| Plaintiff,          ) | |
| ) | |
| v.          ) | Case No.: |
| ) | JURY TRIAL DEMANDED |
| STRIKER PHARMACY, LLC,          ) | |
| ) | |
| Defendant.          ) | |
| ) | |

**COMPLAINT**

1.      Defendant Striker Pharmacy, LLC ("Striker Pharmacy") is a compounding pharmacy in Katy, Texas that is selling illegal drugs and profiting from it.  Striker Pharmacy compounds weight-management products it claims contain retatrutide, an investigational molecule developed by Plaintiff Eli Lilly and Company ("Lilly") for use as a prescription medicine.  Neither the U.S. Food and Drug Administration ("FDA") nor any other regulatory agency in the world has approved a medicine containing retatrutide for any use.  Nonetheless, Striker Pharmacy sells these unapproved products to medical practices, including med spas, and also ships them directly to consumers.  The unapproved drugs that Striker Pharmacy sells are not "weight loss and wellness" medications.  They are illegal drugs.  Retatrutide cannot legally be sold for human use to anyone, anywhere, for any reason.  Lilly brings this action to stop Striker Pharmacy's conduct—conduct that harms both Lilly and consumers.

2.      The American prescription drug market is built on a fundamental premise: before any drug can be sold to patients, FDA must find it to be safe and effective through rigorous clinical testing and review of scientific evidence.  Congress and the states developed this system of pre-market review after Americans were repeatedly and regularly harmed by unregulated, dangerous

1

products sold as medicine. In fact, the Food, Drug & Cosmetic Act's requirement of rigorous clinical data supporting both safety and effectiveness *before* a drug is marketed to Americans traces directly to severe cases of patient death and harm from unapproved drugs peddled by unscrupulous sellers.[1] The principle of evidence-based review for safety and effectiveness is essential to protecting Americans from unscrupulous sellers selling unsafe and untested drugs. Proving that safety and effectiveness for a new molecule like retatrutide requires lengthy clinical trials under strict ethics rules, billions of dollars in investments in research and manufacturing capacity, and—even then—the investment fails to produce an approved medicine more than 90% of the time.

3.      Even after the laws passed, unapproved drugs illegally sold as medicine have caused hundreds of deaths.[2] Striker Pharmacy is engaging in the same type of conduct. In selling its illegal drugs under a false pretext, Striker Pharmacy mocks the safety guarantees imposed by Congress and the states, flouts drug-regulatory standards, and exploits the clinical trial data from investigational medicines that Lilly and others have developed.

4.      Lilly's Phase 3 clinical trials have produced powerful data, including a recent trial that showed retatrutide helped adults living with obesity lose an average of approximately 70 pounds over 80 weeks at the highest dose.[3] But retatrutide is still an investigational molecule, and Lilly has not finished its clinical trials or submitted a final data package to FDA to establish the safety and effectiveness of any retatrutide medicine—nor has any other manufacturer—and FDA

---

[1]  *E.g.*, FDA, Promoting Safe & Effective Drugs for 100 Years, *FDA Consumer* (Jan.-Feb. 2006) (detailing the sulfanilamide and thalidomide scandals that led to the 1938 Act and 1962 Amendments, respectively), *available at* https://www.fda.gov/media/110482/download?attachment.

[2]  *E.g.*, FDA, Unapproved Drugs and Patient Harm (June 2, 2021), https://www.fda.gov/drugs/enforcement-activities-fda/unapproved-drugs-and-patient-harm.

[3]  Lilly | Investors, *Lilly's triple agonist, retatrutide, successful in two additional Phase 3 obesity trials, delivering significant improvements in weight and A1C* (July 23, 2026), https://investor.lilly.com/news-releases/news-release-details/lillys-triple-agonist-retatrutide-successful-two-additional.

has not approved it. So, right now, there is no approved product containing retatrutide that has been proven safe and effective or authorized for human use. Accordingly, retatrutide is legally available only under strict protocols to select patients as an investigational new drug. No other lawful access to any retatrutide product for human use exists. The law is therefore clear and categorical: no drug containing retatrutide—whether compounded or not—may be sold to consumers. Period.

5. Striker Pharmacy surely knows as much. FDA has said it unequivocally: "Retatrutide . . . cannot be used in compounding under federal law."[4] Even Scott Brunner, Chief Executive Officer of the Alliance for Pharmacy Compounding (the trade association for compounding pharmacies), agrees: When "[a]sked if there were any grounds to compound retatrutide, he said, 'Zero. None. None whatsoever.'"[5] Yet, customer reviews confirm that Striker compounds and sells retatrutide.

6. In an apparent effort to cover its illegal conduct, Striker Pharmacy does not list its retatrutide products on its website yet nonetheless continues to provide black market retatrutide to consumers and medical practices. Further, Striker Pharmacy tells the public its ingredients are "source[d] . . . exclusively from FDA registered suppliers to guarantee the utmost quality for your patients' needs."[6] What Striker Pharmacy does not disclose is that its purported retatrutide products are categorically illegal and have never been subject to clinical testing or medical research. They are illegal drugs that have never been approved or verified as safe by FDA or any state regulatory authority.

---

[4] FDA, FDA's Concerns with Unapproved GLP-1 Drugs Used for Weight Loss (June 15, 2026), https://www.fda.gov/drugs/drug-alerts-and-statements/fdas-concerns-unapproved-glp-1-drugs-used-weight-loss.

[5] CBS News, This weight-loss drug hasn't been approved by the FDA. Doctors are prescribing it anyway (June 8, 2026), https://www.cbsnews.com/projects/2026/experimental-weight-loss-drug/.

[6] Striker Pharmacy, About Us, https://strikerrx.com/about-us/ (last visited Aug. 6, 2026).

7.      The consequences of Striker's conduct are real and dangerous for consumers. Consumers who purchase these illegal products are injecting themselves with substances of unknown composition, purity, potency, and sterility.  These formulations and manufacturing quality processes have never been subject to FDA testing or review, clinical studies, or efficacy research.  Illegal drugs made outside of a regulated, inspected supply chain are more likely to contain bacteria and other harmful contaminants and impurities.  Consumers have no way to know whether these products are safe or effective.

8.      Striker Pharmacy's illegal scheme also directly harms Lilly.  In addition to its research developing retatrutide, Lilly has developed several FDA-approved obesity management medicines.  By relying on Lilly's studies, Striker Pharmacy free rides on Lilly's innovation and research and development while bearing none of the costs, regulatory burdens, or responsibility for patient safety during that process.  Consumers are switching from Lilly's FDA-approved medicines to illegal retatrutide products, citing purported lower costs and perceived superior efficacy—illegal sales driven by Striker Pharmacy's compounding and sale of illegal retatrutide products.  By selling illegal retatrutide products to people seeking medication for their obesity-related conditions, Striker Pharmacy's illegal sales are costing Lilly sales of its FDA-approved obesity management medicines.

9.      The harm to consumers and Lilly does not end there.  Striker Pharmacy is also poisoning the well for the future of retatrutide medicines.  Because no retatrutide medicine is yet commercially available from any lawful source, consumers' first experiences with products purporting to be retatrutide are occurring exclusively through black-market sellers and "pharmacies" like Striker Pharmacy.  When those consumers suffer adverse events—as many already have—they associate them with retatrutide as a molecule, not the particular illegal product

4

sold by the illegal seller.  By the time Lilly brings its FDA-approved retatrutide medicine to market, Striker Pharmacy and sellers like it will have conditioned both potential patients who took its illegal drugs as well as the public at large to associate retatrutide with danger and harm, permanently damaging the approved medicine's potential to help patients who need it.

10.     Striker Pharmacy's conduct is not an isolated incident.  In just the last several months, FDA has issued at least 16 warning letters to sellers of illegal retatrutide products.  Striker Pharmacy is part of a dangerous and growing black market that threatens public health—and violates the law of numerous states.

11.     Lilly asks this Court to put a stop to it.  Lilly seeks a permanent injunction barring Striker Pharmacy from compounding, marketing, selling, or distributing any product containing or purporting to contain retatrutide; damages and disgorgement of Striker Pharmacy's profits; and an award of attorneys' fees and costs.  American consumers deserve better than the risky and unlawful products that Striker Pharmacy is selling them.

## THE PARTIES

12.     Plaintiff Eli Lilly and Company is a corporation organized and existing under the laws of Indiana and has its principal place of business in Indiana.

13.     Defendant Striker Pharmacy is a Texas limited liability company with its principal place of business at 1330 Pin Oak Road, Katy, Texas 77494.  Striker Pharmacy is a compounding pharmacy that compounds and dispenses pharmaceutical products, including retatrutide, to consumers through its partnerships with medical spas and through its website at https://strikerrx.com/, which is accessible to consumers nationwide.[7]  Philip Brown III is Striker

---

[7]     Striker Pharmacy, Licensed Sterile Compounding 503A Pharmacy, https://strikerrx.com/ (last visited Aug. 6, 2026).

Pharmacy's managing member and, on information and belief, its sole member.[8] Striker Pharmacy was incorporated in Texas on June 13, 2018, and has registered as a foreign limited liability company in multiple states—including Vermont, Oregon, Utah, Maine, and Montana—in early 2026, indicating nationwide dispensing operations. Striker Pharmacy also maintains a branch location at 3908 Dalgreen Drive, Dallas, Texas 75214.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15. Striker Pharmacy is subject to personal jurisdiction in Texas because it is organized under Texas law and its principal place of business is located in Texas. Striker Pharmacy is also subject to personal jurisdiction in Texas because it has significant contacts with the forum and has purposefully availed itself of the privilege of conducting business in Texas, including by operating a compounding pharmacy at 1330 Pin Oak Road, Katy, Texas, maintaining a branch office at 3908 Dalgreen Drive, Dallas, Texas, operating a website at https://strikerrx.com/ that markets and dispenses compounded pharmaceutical products to consumers in Texas, and by compounding and dispensing the purported retatrutide products at issue in this Complaint from its Texas-based facilities to consumers in Texas.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Lilly's claims occurred in this District. Striker

---

[8] Texas Secretary of State, Business Organizations Inquiry, Striker Pharmacy, LLC, https://direct.sos.state.tx.us/acct/acct-login.asp (after logging in, enter Striker Pharmacy, LLC in the search field) (last visited Aug. 6, 2026).

Pharmacy operates and conducts business in this District, including by engaging in its unlawful promotion and sale of compounded retatrutide products here.

## GENERAL ALLEGATIONS

I.      **FDA'S RIGOROUS AND THOROUGH REVIEW OF NEW DRUGS AND MEDICINES PROTECTS AMERICAN PATIENTS**

   A.      **FDA's Approval of New Drugs**

   17.      In FDA's words, "American consumers benefit from having access to the safest and most advanced pharmaceutical system in the world."[9]  The American system for reviewing new medicines, with its rigorous and thorough pre-market evaluation of scientific data, is crucial for public health.

   18.      Before a new drug can be brought to market, the drug must be clinically tested through a rigorous series of studies designed to determine whether the medication is safe and effective for use under specific conditions and for specific indicated purposes.  As an initial step, a drug sponsor must obtain FDA authorization to administer an investigational drug to human subjects through an Investigational New Drug ("IND") application.[10]  The IND process requires sponsors to submit detailed preclinical data, manufacturing information, and clinical protocols for FDA review.  The IND does not authorize commercial sale of the drug.  ***Any*** distribution to or use of the investigational drug on humans outside of an effective  IND protocol is unlawful.

   19.      After proceeding through the years-long clinical trial process, sponsors must provide FDA with a New Drug Application ("NDA") or Biologics License Application ("BLA") containing sufficient evidence proving the product is safe and effective for its intended indications,

---

[9]    FDA, *Development and Review Process | Drugs* (Aug. 8, 2022), https://www.fda.gov/drugs/development-approval-process-drugs.

[10]    *See* 21 U.S.C. § 355(i); 21 C.F.R. § 312.

among other things.  That evidence is subjected to a structured, multi-disciplinary review involving physicians, statisticians, chemists, pharmacologists, and other scientists.  Approval is granted only if this review establishes that a drug's health benefits outweigh its known risks in treating particular conditions.

20.     Additionally, obtaining and maintaining FDA approval requires strict compliance with current Good Manufacturing Practices ("cGMP") regulations across the entire supply chain, from raw materials to finished medical products.  Manufacturers must audit suppliers, control material specifications, and validate processes to ensure the safety, identity, and strength of the product.[11]  This ensures that products reaching the American public meet critical quality standards.

21.     FDA approval is notoriously hard to achieve in the United States.  More than 90% of drug candidates fail.  It is also an enormously costly and time-intensive process.  On average, it takes ten to fifteen years and costs $2.6 billion to develop one new FDA-approved medicine.

22.     If a prescription drug or biologic is approved, FDA's vigorous oversight continues after its approval.  Among other things, sponsors must report all promotional materials to FDA; track and trace each finished product and report any deviations; and promptly report adverse events.

23.     This continuous oversight allows America to represent what FDA has called "the gold standard" for pharmaceutical regulation.

24.     In addition to federal regulations, states play an important role in regulating the sale of drugs and biologics within their borders.  Most states prohibit the sale of prescription drugs that lack FDA or state regulatory approval and further prohibit the sale of even approved drugs that are

---

[11]   FDA, *Facts About the Current Good Manufacturing Practice (CGMP)* (Nov. 21, 2025), https://www.fda.gov/drugs/pharmaceutical-quality-resources/facts-about-current-good-manufacturing-practice-cgmp.

misbranded (e.g., false, misleading, or inaccurate information on drug labels) or adulterated (e.g., manufactured under unsanitary conditions).

**B.    Compounded Versions of Unapproved Drugs Are Illegal**

25.    Compounded drugs live at the other end of the regulatory spectrum:  they are not FDA approved, do not undergo clinical trials, are not made pursuant to cGMP, and are not subject to pharmacovigilance requirements like adverse event reporting.  Indeed, FDA generally does not even know what compounded drugs are produced or sold in the United States, where they are made, or by whom.  But to state the obvious—and more fundamentally—a pharmacy *cannot* compound and sell a compounded version of a drug when the very drug itself has not been approved by FDA.

26.    Drug compounding is a practice in which a licensed pharmacist "mixes or alters ingredients of a drug to create a medication tailored to the needs of an individual patient."[12]  For example, if an individual patient is allergic to an ingredient in an FDA-approved medicine, a compounding pharmacy could produce a version of that medication that does not contain the allergen for that individual patient.  But to reiterate, a pharmacy *cannot* produce an individualized version of a medication that has not been FDA approved.  No lawful compounded retatrutide product exists.  Retatrutide cannot be lawfully used in compounding.

27.    Even with respect to compounded versions of FDA-approved drugs, FDA has made clear that "[c]ompounded drugs are not FDA-approved,"[13] and that "[c]ompounded drugs . . . do

---

[12]    FDA, *Human Drug Compounding* (June. 15, 2026), https://www.fda.gov/drugs/guidance-compliance-regulatory-information/human-drug-compounding.

[13]    FDA, *Compounding and the FDA: Questions and Answers* (Sept. 16, 2025), https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers.

not have the same safety, quality, and effectiveness assurances as approved drugs."[14]  These warnings carry even greater force for compounded products purportedly containing *unapproved* drugs, which lack even the baseline assurances of an approved reference product.

28.    Importantly, federal law limits the sources available for compounders to produce their products.  Compounding pharmacies can generally only compound products using substances that either comply with United States Pharmacopoeia ("USP") or National Formulary ("NF") monograph, if such exists, are components of FDA-approved drugs, or appear on a qualifying list developed by FDA through regulation.[15]  Retatrutide falls in none of those categories.  It is not the subject of any USP or NF monograph.  FDA has neither approved retatrutide nor placed it on a qualifying list.  Accordingly, FDA has made clear that "retatrutide . . . cannot be used in compounding under federal law," and that retatrutide is "not [a] component[] of FDA-approved drugs and [has] not been found safe and effective for any condition."[16]

## II.    LILLY DEVELOPS FDA-APPROVED OBESITY MANAGEMENT MEDICINES AND INVESTIGATIONAL TREATMENTS

29.    Lilly is an international medicine company and pharmaceutical manufacturer. Throughout its 150-year existence, Lilly has pioneered countless life-changing discoveries. Today, Lilly's medicines help more than 70 million patients across the globe.

30.    Lilly developed tirzepatide over nearly a decade of research and development, conducting 37 clinical trials involving tens of thousands of patients.  Tirzepatide is a first-in-class

---

[14]    FDA, *Compounding and the FDA: Questions and Answers* (June 29, 2022), *available at* https://web.archive.org/web/20240803214713/https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers.

[15]    Food Drug and Cosmetics Act § 503A(b).

[16]    FDA, *FDA's Concerns with Unapproved GLP-1 Drugs Used for Weight Loss* (June 15, 2026), https://www.fda.gov/drugs/drug-alerts-and-statements/fdas-concerns-unapproved-glp-1-drugs-used-weight-loss.

10

dual-action molecule that simultaneously targets receptors for glucagon-like peptide-1 ("GLP-1") and glucose-dependent insulinotropic polypeptide ("GIP").

31.     Tirzepatide is the active pharmaceutical ingredient in MOUNJARO® and ZEPBOUND®, two of Lilly's important FDA-approved medicines.   MOUNJARO® was approved by FDA to treat type 2 diabetes.  ZEPBOUND® was approved by FDA to treat chronic weight management in adults with obesity or overweight with at least one weight-related medical condition, as well as moderate-to-severe obstructive sleep apnea ("OSA") in certain adults with obesity.

32.     Lilly also brought to market the novel molecule orforglipron, which targets GLP-1 receptors.  Orforglipron is the active pharmaceutical ingredient in FOUNDAYO™, which was approved by FDA on April 1, 2026, to treat obesity or overweight with at least one weight-related comorbid condition.  It is a once-daily oral pill that represents a significant advance in obesity treatment as one of the first oral GLP-1 receptor agonists approved for chronic weight management.

33.     Lilly is the only lawful source of mass-produced tirzepatide products in the United States.  No other company has obtained FDA approval to manufacture or sell tirzepatide. Likewise, Lilly is the only company that has sought and received FDA approval for orforglipron. No other entity has conducted the clinical trials or obtained the regulatory approvals necessary to lawfully market orforglipron in the United States.

34.     Over the past decade, Lilly has developed another investigational molecule, retatrutide, a triple hormone receptor agonist that simultaneously activates receptors for GIP, GLP-1, and glucagon—hence the designation "triple agonist."  Lilly is studying retatrutide in several Phase 3 clinical trials to evaluate its potential efficacy and safety in treating obesity and overweight

11

with at least one weight-related medical problem, type 2 diabetes, knee osteoarthritis pain, moderate-to-severe OSA, chronic low back pain, cardiovascular and renal outcomes, and metabolic dysfunction-associated steatotic liver disease.  In Lilly's clinical trials, retatrutide is administered as a once-weekly subcutaneous injection.

35.    Lilly identified retatrutide as a candidate through extensive laboratory and analytical work, advanced it through preclinical testing, and filed an Investigational New Drug application with FDA to authorize human clinical trials.  Lilly began the clinical trial process for retatrutide in 2019.

36.    Lilly holds an effective IND application for retatrutide, meaning that Lilly is authorized under federal law to conduct human clinical trials to evaluate the molecule's safety and efficacy.[17]  An IND authorizes only carefully controlled clinical investigations and use under strict FDA oversight; it does not permit general commercial distribution or sale of the investigational drug to consumers.

37.    While Lilly's controlled tests are encouraging, no retatrutide medicine has yet been approved by FDA or any other regulatory agency in the world—and especially not Striker Pharmacy's products.  No medicine containing retatrutide has approved labeling, retatrutide as an API is not a component of any FDA-approved product, and no manufacturing process for retatrutide API or finished products has been validated under cGMP for public commercial distribution.  Any sale of retatrutide for human use is illegal.

---

[17]    21 U.S.C. § 355(i); 21 C.F.R. § 312.

**III.    BLACK MARKET SELLERS ILLEGALLY SELL RETATRUTIDE PRIOR TO ITS FDA APPROVAL**

### A.    The Black Market for Retatrutide

38.    The powerful clinical trial results for retatrutide have generated significant consumer interest in it.  Bad actors have taken advantage of that interest to make a profit, and a black market for "retatrutide" has emerged that is threatening consumer safety.  Striker Pharmacy participates in this black market, pursuing profits over consumer safety by illegally compounding, selling, and distributing products purportedly containing retatrutide.

39.    Capitalizing on consumer demand for obesity-management medications, online sellers—including compounding pharmacies like Striker Pharmacy, "research use only" peptide suppliers, and med spas—bypass the lawful approval process.  They offer what they call "retatrutide," but the substance they sell is an illegal drug produced entirely outside of FDA's oversight—often sourced from unknown foreign suppliers and illegally imported.

40.    Despite FDA's clear directive that retatrutide cannot be used in compounding under federal law, compounding pharmacies like Striker Pharmacy compound and supply medical spas and clinics with black market "retatrutide."[18]  These compounders serve as an upstream supply link for medical spas and clinics that ultimately dispense retatrutide to consumers.  Many compounding pharmacies actively market their service to medical practices—offering wholesale pricing, dedicated account management, and fulfillment partnerships designed specifically for weight-loss clinics and med spas—functioning as a turnkey supply chain for illegal products.  In this way, compounding pharmacies like Striker Pharmacy occupy a critical and unlawful role in the distribution of black-market retatrutide: they compound the product and sell it to medical

---

[18]    FDA, *FDA's Concerns with Unapproved GLP-1 Drugs Used for Weight Loss*, (June 15, 2026), https://www.fda.gov/drugs/drug-alerts-and-statements/fdas-concerns-unapproved-glp-1-drugs-used-weight-loss.

practices that, in turn, dispense it to patients who are unaware that they are receiving an illegal, unverified substance.

41.     These illegal sales of purported retatrutide products by compounding pharmacies and med spas represent a dangerous end-run around the rigorous FDA approval process.  By selling unapproved and unverified substances directly or indirectly to consumers, Striker Pharmacy and other sellers like it expose the public to unknown adverse events while undermining the regulatory framework designed to protect patients and promote the lawful development of safe and effective new drugs.

### B.      FDA's and Lilly's Efforts to Warn Consumers

42.     FDA has recognized the danger of illicit retatrutide and taken direct action against illegal retatrutide sellers to curtail those illegal sales.  In total, FDA has sent at least 16 warning letters related to retatrutide, in addition to more than 100 warning letters since September 2025 to entities marketing compounded GLP-1 receptor agonists with "false or misleading claims."[19]  As FDA stated in a recent press release, these warning letters mark "a new era" of enforcement against the illegal sale of unapproved drugs.[20]  FDA has explicitly stated in warning letters that "introducing or delivering these products for introduction into interstate commerce violates"

---

[19]     For example, on March 31, 2026, FDA issued warning letters to: (a) Gram Peptides for selling "Retatrutide" (also marketed as "GLP-1-R peptide") that it promoted for "appetite suppression, insulin sensitivity, thermogenesis, and fat-oxidation"; (b) Prime Sciences for selling "GLP1-R" (identified as retatrutide) that it promoted with claims that "[r]etatrutide has shown higher weight loss results in clinical trials, with an average of up to 28% body weight reduction"; and (c) Lovega LLC d/b/a Pink Pony Peptides for selling "GLP-3 RT" (identified as retatrutide) that it promoted as offering "three times the fat-fighting horsepower" with "jaw-dropping results."

[20]     *See* News Release, FDA, FDA Warns 30 Telehealth Companies Against Illegal Marketing of Compounded GLP-1s (Mar. 3, 2026), https://www.fda.gov/news-events/press-announcements/fda-warns-30-telehealth-companies-against-illegal-marketing-compounded-glp-1s; *see also, e.g.*, Warning Letter from FDA to PekCura Labs, MARCS-CMS-721709 (Mar. 31, 2026), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/pekcura-labs-721709-03312026.

federal law.[21]  FDA has also cautioned consumers "not to purchase" retatrutide products labeled "for research purposes" because "they are of unknown quality and may be harmful to their health." Most recently, FDA reiterated that retatrutide is an "unapproved drug," is "not [a] component[] of FDA-approved drugs," and has "not been found safe and effective for any condition."[22]  It made clear: "Retatrutide . . . cannot be used in compounding under federal law."

43.    The broader landscape of GLP-1 API sourcing underscores these risks.  FDA has identified a "concerning trend about non-compliance with CGMP" from "API [active pharmaceutical ingredient] suppliers for compounding sites."[23]  "Over the past five years, 72% of API manufacturing sites subject to FDA regulatory actions (e.g., warning letters, import alerts, and regulatory meetings) were sites that exclusively supply compounding pharmacies."[24]  This is notable because the sites "represent only 18% of API manufacturers."[25]  As of June 15, 2026, FDA had received 990 reports of adverse events associated with compounded semaglutide and 730 reports associated with compounded tirzepatide—numbers that certainly undercount total harm because compounding pharmacies are not required to report adverse events to FDA.[26]  If these are the quality and safety concerns FDA has identified for APIs used to compound *approved* drugs like semaglutide and tirzepatide, the risks are necessarily greater for retatrutide—an investigational

---

[21]    *E.g.*, Warning Letter from FDA to Gram Peptides, MARCS-CMS-721806 (Mar. 31, 2026), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/gram-peptides-721806-03312026.

[22]    FDA, FDA's Concerns with Unapproved GLP-1 Drugs Used for Weight Loss (June 15, 2026), https://www.fda.gov/drugs/drug-alerts-and-statements/fdas-concerns-unapproved-glp-1-drugs-used-weight-loss.

[23]    FDA, *Report on the State of Pharmaceutical Quality* (FY 2024), https://www.fda.gov/media/188236/download.

[24]    *Id*.

[25]    *Id*.

[26]    FDA, FDA's Concerns with Unapproved GLP-1 Drugs Used for Weight Loss (June 15, 2026), https://www.fda.gov/drugs/drug-alerts-and-statements/fdas-concerns-unapproved-glp-1-drugs-used-weight-loss.

molecule for which no reference standard, approved labeling, or manufacturing specifications have ever been established by FDA.

44.     FDA has warned companies that have "illegally sold unapproved drugs containing . . . retatrutide that are falsely labeled 'for research purposes' or 'not for human consumption,'" noting that "[t]hese products have been sold directly to consumers for human use with dosing instructions."[27] Unlike semaglutide and tirzepatide, which are active ingredients in FDA-approved products and were at one time subject to a drug shortage permitting limited compounding, retatrutide has never appeared on FDA's drug shortage list, has never been the subject of any NDA or BLA, and has never been approved for any indication. There is accordingly no compounding exemption under Section 503A or Section 503B of the FDCA, or under any state law, that could authorize the compounding or sale of retatrutide.

45.     Lilly has also publicly warned consumers about the dangers of illegal products claiming to be or to contain retatrutide, making clear that selling retatrutide to consumers for human use is illegal, and that consumers have no way to verify the safety of what they are receiving on the black market.[28] To combat black-market drugs, Lilly continues to work with law enforcement and regulatory authorities.

### C.     Consumers Are Suffering Adverse Effects from Black Market Retatrutide

46.     Online communities, including Reddit forums such as r/Retatrutide and r/Biohacking, demonstrate a thriving black market for illegal retatrutide products and its dangers. Consumers openly discuss purchasing, self-administering, and comparing dosages of retatrutide

---

[27]     *Id.*; *see also* FDA, Warning Letter from FDA to Susan Vega, Lovega LLC d/b/a Pink Pony Peptides, MARCS-CMS 721088 (Mar. 31, 2026), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/lovega-llc-dba-pink-pony-peptides-721088-03312026.

[28]     *See, e.g.*, Lilly, *What to know about retatrutide: An investigational triple hormone receptor agonist*, Lilly, https://www.lilly.com/news/stories/what-to-know-about-retatrutide (last updated June 6, 2026).

products obtained from unregulated sources, including products sourced from Chinese manufacturers and suppliers.[29]

47.    Reports from these online communities document adverse events, including emergency room visits with heart rates as low as 43 beats per minute; elevated fasting glucose levels; severe skin reactions described as a sensation of "tiny mites or something crawling and biting;" brain fog; and concerns about bacterial contamination and endotoxins from products not manufactured in regulated or sterile laboratories.  Upon information and belief, consumers experienced these adverse events without receiving any warnings.



48.    One consumer reported being hospitalized after using a purported retatrutide product obtained from unregulated sources, while another user described a friend who "got hospitalized because of the bacteria" in products that "aren't made in regulated or sterile labs."[30] Indeed, there are *no* regulated manufacturers authorized to prepare retatrutide for human use.

---

[29]    *See, e.g.*, u/Confident-Rhubarb957, REDDIT (r/Biohacking), "Tirz - Reta switch. And Reta dosing advice," https://www.reddit.com/r/Biohacking/comments/1rsx0oa/tirz_reta_switch_and_reta_dosing_advice/ (last visited Aug. 6, 2026); u/improximus, REDDIT (r/Retatrutide), "Why Reta? Why not Tirz?" https://www.reddit.com/r/BodyHackGuide/comments/1szktx8/why_reta_why_not_tirz/ (last visited Aug. 6, 2026).

[30]    u/D3st9ny, REDDIT (r/Retatrutide), "Bacteria and endotoxins," https://www.reddit.com/r/Retatrutide/comments/1suodk7/bacteria_and_endotoxins/ (last visited Aug. 6, 2026); u/cac520, REDDIT (r/Retatrutide), "Realized it's time to stop Reta," https://www.reddit.com/r/Retatrutide/comments/1pspn4r/realized_its_time_to_stop_reta/ (last visited Aug. 6,

## IV.   STRIKER PHARMACY SELLS UNAPPROVED RETATRUTIDE PRODUCTS IN VIOLATION OF STATE LAW

49.   Striker Pharmacy's website indicates that the compounding pharmacy supplies compounded weight management and wellness "medications" to "medical practices."  But a closer look reveals that Striker Pharmacy illegally sells purported retatrutide products—and also ships them directly to consumers' front door.



50.   Striker Pharmacy's website does not list retatrutide as one of the "medications" it compounds.[31]   That's not surprising, as it no doubt knows that its retatrutide products are unapproved new drugs and that it is illegal to compound or sell them.  Its conduct certainly suggests as much.  Although Striker Pharmacy's website contains a "Products" tab, the tab no longer functions, and the product listings have been removed or hidden from public view.[32]   Striker Pharmacy has also removed the "Patients Form" and instructions on "How to Administer your

---

2026); u/BTheFurnace, REDDIT  (r/Retatrutide), "Those who have taken reta for over 6 months: Has your resting heart rate returned to normal?" https://www.reddit.com/r/Retatrutide/comments/1rcxz1m/those_who_have_taken_reta_for_over_6_months_has /?rdt=49360 (last visited Aug. 6, 2026) (comment posted by Last-boomer1964).

[31]   *See* Striker Pharmacy, Home, https://strikerrx.com/ (last visited Aug. 6, 2026).

[32]   *See*  Web  Archive,  Striker  Pharmacy,  About  Us, https://web.archive.org/web/20260313202712/https://strikerrx.com/about-us/#treatments (Mar. 13, 2026).  It also previously included a link to request "a list of our medications and pricing."  *See* Web Archive, Striker Pharmacy, About Us,  https://web.archive.org/web/20251113083206/https://strikerrx.com/about-us/#treatments (Nov. 13, 2025).

GLP-1 Injections," which on information and belief were included on its website as recently as March 13, 2026.[33] Striker Pharmacy has, in effect, scrubbed its product offerings from its website while continuing to solicit business from medical practices and consumers behind the scenes.

51.    Striker Pharmacy's website still advertises "[c]ustomized patient-specific compounds tailored for you" and prominently describes itself as "a licensed sterile compounding 503A pharmacy specializing in weight loss and wellness."[34] Striker Pharmacy also touts that it "source[s its] ingredients exclusively from FDA registered suppliers" and provides "top-quality medications and exceptional service through [its] licensed sterile compounding USA pharmacy in Katy, Texas, USA."[35] In doing so, Striker Pharmacy implies that its medications are FDA approved, even though FDA has not approved retatrutide for any use.[36]



We source our ingredients exclusively from FDA registered suppliers
to guarantee the utmost quality for your patients' needs.

52.    The website provides a form for doctors to request a quote or submit inquiries.[37] The website further directs patients who wish to purchase products to "first ask your doctor to contact us," explaining that "[a]s we are a compounding company, we will only work directly with

---

[33]    *Id.*

[34]    *See* Striker Pharmacy, Home, https://strikerrx.com/ (last visited Aug. 6, 2026).

[35]    *Id.*

[36]    *Id.*

[37]    Striker Pharmacy, Contact Us | Doctors Form, https://strikerrx.com/doctors-contact-us/, (last visited Aug. 6, 2026).

physicians."[38] The clear implication is that Striker Pharmacy's products—including retatrutide—remain available.

53.    However, Striker Pharmacy compounds and sells illegal retatrutide to medical spas and other providers which have, on information and belief, prescribed the same to unwitting consumers.   Striker Pharmacy's black market retatrutide is then shipped to consumers or administered to them at med spas and wellness clinics, as reflected below in vials from Striker Pharmacy containing purported retatrutide and a pricing list from Striker Pharmacy listing retatrutide.



---

[38]    Striker Pharmacy, Contact Us, https://strikerrx.com/contact-us/, (last visited Aug. 6, 2026).



| ID | CATEGORY | TYPE | AQUEOUS PRODUCT | FILL VOLUME | BUD | PRICE | STATUS | NOTES |
|---|---|---|---|---|---|---|---|---|
| 202105898 | Reta | Liquid | Retatrutide 1mg/0.5ml | 2ml | 120 | $ 95.00 | Active | |
| 202105897 | Reta | Liquid | Retatrutide 2mg/0.5ml | 2ml | 120 | $ 125.00 | Active | |
| 202105899 | Reta | Liquid | Retatrutide 4mg 0.5ml | 2ml | 120 | $ 180.00 | Active | |
| 202553870 | Reta | Liquid | Retatrutide 6mg/0.5ml | 2ml | 120 | $ 240.00 | Active | |
| 202553870 | Reta | Liquid | Retatrutide 8mg 0.5ml | 2ml | 120 | $ 295.00 | Active | |
| 202105900 | Reta | Liquid | Retatrutide 12mg/0.5ml | 2ml | 120 | $ 400.00 | Active | |
| 202553871 | Reta | Liquid | Retatrutide 15mg/0.5ml | 2ml | 120 | $ 490.00 | Active | |

54.     Consumer reviews confirm Striker Pharmacy compounds and sells illegal retatrutide to med spas and other providers.  For example, one reviewer described how Striker Pharmacy supplies retatrutide products to a "med spa in Florida" for its "patients."[39]



Another reviewer recently indicated they have been "working with a provider that uses Striker for GLP1s and many different peptides," including retatrutide.[40]

---

[39]    *See, e.g.*, review posted by CSFlorida, FL GLP Winner, Striker Pharmacy (May 2, 2026), https://www.glpwinner.com/pharmacies/60?region=MI&drug=TIRZEPATIDE&dose=2.5.

[40]    Review posted by Ryan Sheldon, Google, https://tinyurl.com/y6ytkw56 (last visited Aug. 6, 2026).



55.    Other reviews confirm that "patients" have engaged and transacted directly with Striker Pharmacy for medications.  One review from April 11, 2026, states that Striker Pharmacy provided "[n]o promised consultation"—"[j]ust a delivery left on doorstep."[41]



56.    Also alarmingly, numerous recent reviews recount recurring problems with the compounded products received from Striker Pharmacy.  Among other things, consumers report how they were shorted medication; were unable to retrieve their medication because of its packaging; and received products that were ineffective and of questionable "purity and concentrations."[42]

---

[41]    Review        posted        by        Flo        Mierke,        GLP        Winner,        Striker        Pharmacy, https://www.glpwinner.com/pharmacies/60?region=GA&drug=TIRZEPATIDE, (last visited Aug. 6, 2026).

[42]    Reviews posted by Cindy Witt, Julia Scarborough, Google, https://tinyurl.com/y6ytkw56 (last visited Aug. 6, 2026);        Review        posted        by        Kathleen        Tibbets,        GLP        Winner,        Striker        Pharmacy, https://www.glpwinner.com/pharmacies/60?region=IL&drug=TIRZEPATIDE (last visited Aug. 6, 2026).







57.     Striker Pharmacy's products pose a serious risk to consumer health and safety. Unlike FDA-approved drugs, Striker Pharmacy's retatrutide products have not been tested by FDA for safety, efficacy, or quality through clinical trials. Consumers who purchase these products are exposed to substances of unknown composition, purity, potency, and sterility, as in fact reflected by consumer reviews.

58.     Striker Pharmacy does not disclose on its website the source of its retatrutide API or any quality control or testing protocols applied to its retatrutide products. Rather, Striker Pharmacy's website touts that it is "LegitScript-certified" with "over 30 years of combined

experience" and states that its mission "is to deliver exceptional service, competitive pricing, and the highest quality medications."[43]

59.     Equally troubling, Striker Pharmacy seeks to skirt below the radar by purportedly selling products only to medical practices, while in fact it appears from product reviews that consumers are purchasing and receiving compounded retatrutide directly from Striker Pharmacy.

60.     Striker Pharmacy's compounded retatrutide products are unapproved new drugs. Under federal law, a product (other than food) is a "drug" if, as relevant here, it is intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease, is intended to affect the structure or any function of the human body, or is intended for use as a component of such products.[44]    The laws of Alaska, Colorado, Connecticut, North Carolina, South Carolina, Tennessee, Texas, and Washington all define a "drug" using the same test.[45]  By selling products that purportedly treat obesity (a recognized disease) and promote weight loss (by affecting the structure and function of the body as a receptor agonist), Striker Pharmacy and sellers like it are selling "drugs" that have not been approved—and are undeniably illegal.

61.     No medicine containing retatrutide has ever received FDA approval.  Lilly's retatrutide, which is the only formulation with clinical data, is an investigational molecule that is not approved for human use.

62.     Striker Pharmacy does not hold and cannot hold a valid marketing application for retatrutide because no such application has been filed with or approved by FDA.

---

[43]    Striker Pharmacy, Home, https://strikerrx.com/, (last visited Aug. 6, 2026).

[44]    21 U.S.C. § 321(g).

[45]    Alaska Stat. § 17.20.370(7); Colo. Rev. Stat. § 12-280-103(16); Conn. Gen. Stat. § 21a-92(8); N.C. Gen. Stat. § 106-121(6); S.C. Code § 39-23-20; Tenn. Code § 53-1-102(14); Tex. Health & Safety Code § 431.002(14); R.C.W. § 69.04.009.

63.     Striker Pharmacy's products do not qualify for any compounding exemption under Section 503A of the FDCA, 21 U.S.C. § 353a, because among other reasons, retatrutide is not a component of any FDA-approved drug and therefore cannot be lawfully compounded.  FDA has stated unequivocally: "Retatrutide . . . cannot be used in compounding under federal law," is "not [a] component[] of FDA-approved drugs," and has "not been found safe and effective for any condition."[46]

## V.     STRIKER PHARMACY'S CONDUCT HARMS CONSUMERS AND LILLY

64.     Consumers who use Striker Pharmacy's illegal, compounded retatrutide products are harmed because they receive illegal and unverified products of unknown safety, purity, potency, and efficacy.  Indeed, online reports confirm that consumers who self-administer black-market retatrutide have experienced adverse events, *see* Section III.C.

65.     Striker Pharmacy's conduct also causes unfair competitive harm to Lilly.  Some consumers who meet the criteria for obesity-management medications are choosing illegal retatrutide products over Lilly's FDA-approved obesity-management medicines, citing illegal sellers' claims of lower cost and perceived superior efficacy as the primary drivers.  For example, one user reported that the cost of "10×20mg of retatrutide was about half the cost of a single 7.5mg Mounjaro pen," making it "hard to justify staying on Mounjaro long term."[47]  Another user who lost 169 pounds on tirzepatide asked whether "switching over to reta" would help reach her

---

[46]     FDA, FDA's Concerns with Unapproved GLP-1 Drugs Used for Weight Loss (June 15, 2026), https://www.fda.gov/drugs/drug-alerts-and-statements/fdas-concerns-unapproved-glp-1-drugs-used-weight-loss.

[47]     u/ApplicationNo7327, REDDIT (r/Retatrutide), "Switching from Mounjaro (Tirzepatide) to Reta - my experience," https://www.reddit.com/r/Retatrutide/comments/1stnp7l/switching_from_mounjaro_tirzepatide_to_reta_my/ (last visited Aug. 6, 2026).

remaining weight-loss goal.[48]    These consumer accounts demonstrate that consumers are being diverted from Lilly's FDA-approved medicines to risky, illegal products.

66.    By selling illegal retatrutide products, Striker Pharmacy diverts consumers away from Lilly's FDA-approved products, including MOUNJARO®, ZEPBOUND®, and FOUNDAYO™.   Both companies market and sell products to the same potential customers seeking treatment for obesity, type 2 diabetes, and/or related metabolic conditions.   Because Striker Pharmacy's unapproved retatrutide products and Lilly's FDA-approved medicines target the same consumer pool, Striker Pharmacy's illegal sales are in direct competition with Lilly and are costing Lilly sales of its FDA-approved obesity-management medicines.   Scores of people seeking obesity-management treatment have been persuaded to purchase Striker Pharmacy's products, as evidenced by consumer testimonials.

67.    Striker Pharmacy also undermines the market for Lilly's future retatrutide medicine, if approved, which Lilly is studying through the lawful FDA approval process.   Striker Pharmacy is selling unsafe, illegal products that are poisoning the well of consumer confidence in retatrutide as a potential therapeutic option if it is one day approved.   Because there is no currently approved retatrutide medicine that is commercially available from any lawful source, consumers' first experiences with retatrutide are occurring exclusively through black-market sellers like Striker Pharmacy.   When these people experience adverse events—as many already have, *see supra* Section III.C—they often do not attribute those harms to Striker Pharmacy, but instead to all products containing retatrutide.[49]   Those consumers are unlikely ever to try retatrutide again—

---

[48]    u/soggy_bananah,    REDDIT    (r/Retatrutide),    "Switch    from    tirz?" https://www.reddit.com/r/Retatrutide/comments/1ssuf15/switch_from_tirz/ (last visited Aug. 6, 2026).

[49]    u/cac520,    REDDIT    (r/Retatrutide),    "Realized    it's    time    to    stop    Reta," https://www.reddit.com/r/Retatrutide/comments/1pspn4r/realized_its_time_to_stop_reta/ (last visited Aug. 6, 2026) (explaining decision to "stop Reta" based on reactions to and side effects from "Reta").

26

including any lawful version that Lilly ultimately brings to market after FDA approval.  Even more, the experiences of those consumers are likely to deter other potential users.  Each adverse event caused by Striker Pharmacy's illegal products thus represents not only a current injury to the consumer, but a permanent loss of future Lilly patients.

68.     The reputational contamination caused by Striker Pharmacy's unsafe products extends beyond the individual consumers who are directly harmed.  Consumers who experience adverse events from black-market retatrutide share those experiences publicly—on Reddit, on social media, and in personal networks—creating negative associations between retatrutide and adverse events.  These public accounts will deter other potential consumers from ever using retatrutide products if approved by FDA.  By the time Lilly brings its FDA-approved retatrutide product to market, Striker Pharmacy and sellers like it will have already conditioned the public to associate retatrutide as an ingredient with danger, illegality, and reduced or total lack of efficacy.  Lilly will thus be forced to overcome not only the ordinary challenges of a new product launch, but the additional burden of rehabilitating a product that has been tarnished by Striker Pharmacy's unlawful conduct.

69.     Striker Pharmacy's conduct also causes irreparable harm to Lilly's reputation and goodwill.  Striker Pharmacy trades on the reputation and clinical data associated with Lilly's products and retatrutide.  On information and belief, if consumers experience adverse effects from Striker Pharmacy's illegal products, they are likely to attribute those harms to retatrutide or to Lilly, damaging Lilly's brand and the public's confidence in Lilly's products and pipeline.

70.     Finally, Striker Pharmacy's conduct harms innovation and the competitive marketplace by allowing Striker Pharmacy to sell products as if they were pharmaceutical-grade medicines for human use with FDA approval, when they are not.  Striker Pharmacy avoids the

27

rigorous testing, regulatory compliance, and quality controls that Lilly and other pharmaceutical companies must satisfy, and instead free rides on Lilly's investment in developing legitimate, safe medicines by selling illegal retatrutide through unlawful and intentionally deceptive means.

71.    The harms caused by Striker Pharmacy's conduct are ongoing and will continue unless Striker Pharmacy is enjoined from marketing and selling its illegal retatrutide products. Striker Pharmacy has profited from its unlawful conduct at the expense of consumers and Lilly.

72.    Lilly has no adequate remedy at law.  The damage to Lilly's reputation, goodwill, and competitive position cannot be fully compensated through monetary damages alone.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Unfair Competition**
**in Violation of the Alaska Unfair Trade Practices and Consumer Protection Act**
**Alaska Stat. §§ 45.50.471 *et seq*.**

73.    Lilly incorporates by reference each of the foregoing allegations as if fully set forth herein.

74.    The Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471 *et seq.*, prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

75.    Alaska Stat. § 17.20.110(a)(1)–(2) prohibits the sale, delivery, or offering for sale of any "new drug" unless an application has been approved for such drug under federal law.  Under Alaska law, a "new drug" means a drug that is not generally recognized among qualified experts as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof, or which has not, other than in such investigations, been used to a material extent or for a material time under such conditions.

28

76.     Striker Pharmacy's purported retatrutide products are "new drugs" within the meaning of Alaska law.  Retatrutide has not been approved by FDA, is not generally recognized as safe and effective, and has not been used to a material extent or for a material time.

77.     Striker Pharmacy has violated Alaska Stat. § 17.20.110(a)(1)–(2) by manufacturing, distributing, selling, and offering for sale unapproved retatrutide products to consumers in Alaska and throughout the United States.

78.     Striker Pharmacy's sale of unapproved new drugs in violation of Alaska Stat. § 17.20.110(a)(1)–(2) constitutes an unfair or deceptive act or practice and an unfair method of competition in violation of the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471 *et seq.*

79.     Lilly has been injured by Striker Pharmacy's unlawful conduct, including through lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers to unapproved and potentially unsafe products.

80.     Lilly has standing to bring this action and is entitled to all available remedies under Alaska Stat. § 45.50.531, including injunctive relief, damages, reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Unfair Trade Practices**
**in Violation of the Colorado Consumer Protection Act**
**Colo. Rev. Stat. § 6-1-105(z)**

81.     Lilly incorporates by reference each of the foregoing allegations as if fully set forth herein.

82.     The Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105, prohibits deceptive trade practices, including under subsection (z), any other act or practice which is unfair or deceptive to the consumer.

83.     Colo. Rev. Stat. § 12-280-131(1) prohibits the sale or offering for sale of any "new drug" unless an approved application is in effect for such drug under federal law.

84.     Striker Pharmacy's purported retatrutide products are "new drugs" within the meaning of Colorado law. Retatrutide has not been approved by FDA, is not generally recognized as safe and effective, and has not been used to a material extent or for a material time.

85.     Striker Pharmacy has violated Colo. Rev. Stat. § 12-280-131(1) by manufacturing, distributing, selling, and offering for sale unapproved retatrutide products to consumers in Colorado and throughout the United States.

86.     Striker Pharmacy's sale of unapproved new drugs in violation of Colo. Rev. Stat. § 12-280-131(1) constitutes a deceptive trade practice in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105(z).

87.     Lilly has been injured by Striker Pharmacy's unlawful conduct, including through lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers to unapproved and potentially unsafe products.

88.     Lilly has standing to bring this action and is entitled to all available remedies under Colo. Rev. Stat. § 6-1-113, including injunctive relief, damages, and reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**Unfair Trade Practices**
**in Violation of the Connecticut Unfair Trade Practices Act**
**Conn. Gen. Stat. § 42-110b(a)**

89.     Lilly incorporates by reference each of the foregoing allegations as if fully set forth herein.

90. The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b(a), provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

91. Conn. Gen. Stat. § 21a-110(a)–(b) prohibit the sale, delivery, or offering for sale of any "new drug" unless an approved application is in effect for such drug under federal law.

92. Striker Pharmacy's purported retatrutide products are "new drugs" within the meaning of Connecticut law. Retatrutide has not been approved by FDA, is not generally recognized as safe and effective, and has not been used to a material extent or for a material time.

93. Striker Pharmacy has violated Conn. Gen. Stat. § 21a-110(a)–(b) by manufacturing, distributing, selling, and offering for sale unapproved retatrutide products to consumers in Connecticut and throughout the United States.

94. Striker Pharmacy's sale of unapproved new drugs in violation of Conn. Gen. Stat. § 21a-110(a)–(b) constitutes an unfair or deceptive act or practice in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b(a).

95. Lilly has been injured by Striker Pharmacy's unlawful conduct, including through lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers to unapproved and potentially unsafe products.

96. Lilly has standing to bring this action and is entitled to all available remedies under Conn. Gen. Stat. § 42-110g, including injunctive relief, damages, and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**Unfair Competition**
**in Violation of North Carolina Unfair and Deceptive Trade Practices Act**
**N.C. Gen. Stat. §§ 75-1.1 *et seq.***

97.     Lilly incorporates by reference each of the foregoing allegations as if fully set forth herein.

98.     The North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

99.     N.C. Gen. Stat. § 106-135 prohibits the sale, delivery, or offering for sale of any "new drug" unless an approved application is in effect for such drug under federal law.

100.    Striker Pharmacy's purported retatrutide products are "new drugs" within the meaning of North Carolina law. Retatrutide has not been approved by FDA, is not generally recognized as safe and effective, and has not been used to a material extent or for a material time.

101.    Striker Pharmacy has violated N.C. Gen. Stat. § 106-135 by manufacturing, distributing, selling, and offering for sale unapproved retatrutide products to consumers in North Carolina and throughout the United States.

102.    Striker Pharmacy's sale of unapproved new drugs in violation of N.C. Gen. Stat. § 106-135 constitutes an unfair or deceptive act or practice in violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1.

103.    Lilly has been injured by Striker Pharmacy's unlawful conduct, including through lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers to unapproved and potentially unsafe products.

104. Lilly has standing to bring this action and is entitled to all available remedies under N.C. Gen. Stat. § 75-16, including injunctive relief, damages, and reasonable attorneys' fees and costs.

**<u>FIFTH CAUSE OF ACTION</u>**
**Unfair Competition**
**in Violation of the South Carolina Unfair Trade Practices Act**
**S.C. Code §§ 39-5-20 *et seq*.**

105. Lilly incorporates by reference each of the foregoing allegations as if fully set forth herein.

106. The South Carolina Unfair Trade Practices Act, S.C. Code § 39-5-20, declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

107. S.C. Code § 39-23-70 prohibits the sale, delivery, or offering for sale of any "new drug" unless an approved application is in effect for such drug under federal law.

108. Striker Pharmacy's purported retatrutide products are "new drugs" within the meaning of South Carolina law. Retatrutide has not been approved by FDA, is not generally recognized as safe and effective, and has not been used to a material extent or for a material time.

109. Striker Pharmacy has violated S.C. Code § 39-23-70 by manufacturing, distributing, selling, and offering for sale unapproved retatrutide products to consumers in South Carolina and throughout the United States.

110. Striker Pharmacy's sale of unapproved new drugs in violation of S.C. Code § 39-23-70 constitutes an unfair or deceptive act or practice in violation of the South Carolina Unfair Trade Practices Act, S.C. Code § 39-5-20 *et seq.*

111.    Lilly has been injured by Striker Pharmacy's unlawful conduct, including through lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers to unapproved and potentially unsafe products.

112.    Lilly has standing to bring this action and is entitled to all available remedies under S.C. Code § 39-5-140, including injunctive relief, actual damages, treble damages, and reasonable attorneys' fees and costs.

### SIXTH CAUSE OF ACTION
**Unfair Competition**
**in Violation of the Tennessee Consumer Protection Act**
**Tenn. Code §§ 47-18-104 *et seq.***

113.    Lilly incorporates by reference each of the foregoing allegations as if fully set forth herein.

114.    The Tennessee Consumer Protection Act, Tenn. Code § 47-18-104, prohibits unfair or deceptive acts or practices affecting the conduct of any trade or commerce.

115.    Tenn. Code § 53-1-110 prohibits the sale, delivery, or offering for sale of any "new drug" unless an approved application is in effect for such drug under federal law.

116.    Striker Pharmacy's purported retatrutide products are "new drugs" within the meaning of Tennessee law.  Retatrutide has not been approved by FDA, is not generally recognized as safe and effective, and has not been used to a material extent or for a material time.

117.    Striker Pharmacy has violated Tenn. Code § 53-1-110 by manufacturing, distributing, selling, and offering for sale unapproved retatrutide products to consumers in Tennessee and throughout the United States.

118.    Striker Pharmacy's sale of unapproved new drugs in violation of Tenn. Code § 53-1-110 constitutes an unfair or deceptive act or practice in violation of the Tennessee Consumer Protection Act, Tenn. Code § 47-18-104.

119.     Lilly has been injured by Striker Pharmacy's unlawful conduct, including through lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers to unapproved and potentially unsafe products.

120.     Lilly has standing to bring this action and is entitled to all available remedies under Tenn. Code § 47-18-109, including injunctive relief, damages, and reasonable attorneys' fees and costs.

### SEVENTH CAUSE OF ACTION
### Unfair Competition
### in Violation of Texas Common Law

121.     Lilly incorporates by reference each of the foregoing allegations as if fully set forth herein.

122.     Under Texas common law, unfair competition encompasses any dishonest or fraudulent rivalry in trade and commerce, including the sale of products in violation of applicable law to gain an unfair competitive advantage.

123.     Tex. Health & Safety Code § 431.114(a) prohibits the sale, delivery, or offering for sale of any "new drug" unless an approved application is in effect for such drug under federal law.

124.     Striker Pharmacy's purported retatrutide products are "new drugs" within the meaning of Texas law.  Retatrutide has not been approved by FDA, is not generally recognized as safe and effective, and has not been used to a material extent or for a material time.

125.     Striker Pharmacy has violated Tex. Health & Safety Code § 431.114(a) by manufacturing, distributing, selling, and offering for sale unapproved retatrutide products to consumers in Texas and throughout the United States.

126.     Striker Pharmacy's sale of unapproved new drugs in violation of Tex. Health & Safety Code § 431.114(a) constitutes common law unfair competition under Texas law.

127. Lilly has been injured by Striker Pharmacy's unlawful conduct, including through lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers to unapproved and potentially unsafe products.

128. Striker Pharmacy's conduct was willful and malicious, entitling Lilly to exemplary damages under Texas law.

129. Lilly has standing to bring this action and is entitled to all available remedies, including injunctive relief, damages, and a declaratory judgment under Tex. Civ. Prac. & Rem. Code § 37.009, as well as reasonable attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION
### Unfair Competition
### in Violation of the Washington Consumer Protection Act
### R.C.W. §§ 19.86.010 *et seq.*

130. Lilly incorporates by reference each of the foregoing allegations as if fully set forth herein.

131. The Washington Consumer Protection Act, R.C.W. § 19.86.020, declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

132. R.C.W. § 69.04.570 prohibits the sale, delivery, or offering for sale of any "new drug" unless an approved application is in effect for such drug under federal law.

133. Striker Pharmacy's purported retatrutide products are "new drugs" within the meaning of Washington law. Retatrutide has not been approved by FDA, is not generally recognized as safe and effective, and has not been used to a material extent or for a material time.

134. Striker Pharmacy has violated R.C.W. § 69.04.570 by manufacturing, distributing, selling, and offering for sale unapproved retatrutide products to consumers in Washington and throughout the United States.

36

135.    Striker Pharmacy's sale of unapproved new drugs in violation of R.C.W. § 69.04.570 constitutes an unfair or deceptive act or practice in violation of the Washington Consumer Protection Act, R.C.W. § 19.86.020.

136.    Lilly has been injured by Striker Pharmacy's unlawful conduct, including through lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers to unapproved and potentially unsafe products.

137.    Lilly has standing to bring this action and is entitled to all available remedies under R.C.W. § 19.86.090, including injunctive relief, damages, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Lilly prays that this Court enter judgment in Lilly's favor on Lilly's claims and award Lilly relief including:

1.    An Order declaring that Striker Pharmacy:

    i.    Engaged in unfair competition in violation of the Alaska Unfair Trade Practices Act by its unlawful manufacture, distribution, and sale of unapproved new drugs in violation of the Alaska Food, Drug, and Cosmetic Act;

    ii.    Engaged in unfair trade practices in violation of the Colorado Consumer Protection Act by unlawful manufacture, distribution, and sale of unapproved new drugs in violation of Colo. Rev. Stat. § 12-280-131(1);

    iii.    Engaged in unfair trade practices in violation of the Connecticut Unfair Trade Practices Act by unlawful manufacture, distribution, and sale of unapproved new drugs in violation of Conn. Gen. Stat. § 21a-110(a)-(b);

    iv.    Engaged in unfair trade practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act by its unlawful manufacture, distribution, and sale of unapproved new drugs in violation of the North Carolina Food, Drug, and Cosmetic Act, N.C. Gen. Stat. § 106-135;

    v.    Engaged in unfair trade practices in violation of the South Carolina Unfair Trade Practices Act by its unlawful manufacture, distribution, and sale of unapproved new drugs in violation of S.C. Code § 39-23-70;

vi.   Engaged in unfair trade practices in violation of the Tennessee Consumer Protection Act by its unlawful manufacture, distribution, and sale of unapproved new drugs in violation of Tenn. Code § 53-1-110;

vii.   Engaged in unfair trade practices in violation of the Washington Consumer Protection Act by unlawful manufacture, distribution, and sale of unapproved new drugs in violation of R.C.W. § 69.04.570; and

viii.   Engaged in unfair competition under Texas common law by unlawful manufacture, distribution, and sale of unapproved new drugs in violation of Tex. Health & Safety Code § 431.114(a).

2.   A permanent injunction enjoining Striker Pharmacy and its officers, agents, servants, employees, and all persons acting in concert with them from manufacturing, marketing, advertising, distributing, dispensing, or selling any product containing or purporting to contain retatrutide;

3.   An Order directing Striker Pharmacy to file with this Court and serve on Lilly's attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the Court's injunction.

4.   An Order requiring Striker Pharmacy to account for and pay to Lilly any and all monetary damages, including disgorgement of profits, arising from the foregoing unlawful acts.

5.   An Order for pre-judgment and post-judgment interest on all damages.

6.   An Order requiring Striker Pharmacy to pay Lilly's costs and attorneys' fees in this action pursuant to the Alaska Unfair Trade Practices Act, the Colorado Consumer Protection Act, the Connecticut Unfair Trade Practices Act, the North Carolina Unfair and Deceptive Trade Practices Act, the South Carolina Unfair Trade Practices Act, the Tennessee Consumer Protection Act, Tex. Civ. Prac. & Rem. Code § 37.009, the Washington Consumer Protection Act, and any other applicable provision of law.

7.   Other relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff Eli Lilly and Company hereby demands a trial by jury on all issues so triable.

Dated: August 12, 2026

Respectfully submitted,

/s/ *James John Lomeo*
James John Lomeo (*attorney-in-charge*)
Texas Bar No. 24118993
Southern District No. 3511238
KIRKLAND & ELLIS LLP
401 West 4th Street
Austin, TX 78701
Telephone: (512) 355-4316
Facsimile: (512) 678-9101
james.lomeo@kirkland.com

Diana M. Watral (*pro hac vice forthcoming*)
James R.P. Hileman (*pro hac vice forthcoming*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
diana.watral@kirkland.com
jhileman@kirkland.com

David I. Horowitz (*pro hac vice forthcoming*)
KIRKLAND & ELLIS LLP
2049 Century Park East, 38th Floor
Los Angeles, CA 90067
Telephone: (213) 680-8374
Facsimile: (310) 552-5900
dhorowitz@kirkland.com

Chase Chesser (*pro hac vice forthcoming*)
KIRKLAND & ELLIS LLP
150 3rd Avenue South, Suite 1220
Nashville, TN 37201
Telephone: (629) 222-0131
Facsimile: (629) 222-0101
chase.chesser@kirkland.com

*Counsel for Plaintiff Eli Lilly and Company*