**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ELI LILLY AND COMPANY,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 4:26-cv-06563 |
| | ) | |
| **STRIKER PHARMACY, LLC,** | ) | |
| | ) | |
| *Defendant.* | ) | |

# DEFENDANT STRIKER PHARMACY, LLC'S MOTION TO DISMISS COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii
I. NATURE AND STAGE OF THE PROCEEDING ..... 1
II. ISSUES PRESENTED AND STANDARD OF REVIEW ..... 2
III. SUMMARY OF ALLEGATIONS ..... 4
A. Lilly sells different molecules; it does not sell retatrutide. ..... 4
B. Lilly describes a broader retatrutide market in which Striker is one alleged participant. ..... 4
C. Lilly's diversion examples concern unidentified third parties. ..... 5
D. Lilly's Striker-specific allegations concern its website, sales, and reviews. ..... 5
E. Lilly alleges diversion without identifying a displaced Lilly purchase in the quoted reviews. ..... 6
F. Lilly also alleges harm to its future product, reputation, and competitive position. ..... 6
G. Lilly asserts eight state-law claims. ..... 7
IV. SUMMARY OF ARGUMENT ..... 7
V. ARGUMENT ..... 8
A. Lilly lacks Article III standing. ..... 9
1. Lilly's diversion theory of injury is speculative and unsupported. ..... 9
2. Harm to a future product is neither actual nor imminent. ..... 11
3. The alleged attribution of adverse events to Lilly remains speculative. ..... 13
B. Counts 1-6 and 8 fail because Lilly does not plausibly plead an actual loss proximately caused by Striker. ..... 14
1. Each statute requires Lilly's own actual or ascertainable loss caused by Striker. ..... 14
2. Sales of a different molecule do not plausibly establish a direct, proximately caused loss of Lilly sales. ..... 16
3. Goodwill for a product that does not exist is not an actual loss. ..... 19
C. Count 7 fails because Texas common law does not permit Lilly to privately enforce the Texas Food, Drug, and Cosmetic Act through an unfair-competition claim. ..... 19
VI. CONCLUSION ..... 20
CERTIFICATE OF SERVICE ..... 21

## TABLE OF AUTHORITIES

**Cases**

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ..... 16
*Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208 (2008) ..... 14
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..... 3
*Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696 (9th Cir. 2001) ..... 16
*AstraZeneca Pharms. LP v. Becerra*, 719 F. Supp. 3d 377 (D. Del. 2024), aff'd sub nom. *AstraZeneca Pharms. LP v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 116 (3d Cir. 2025), cert. denied sub nom. *AstraZeneca Pharms. LP v. Kennedy*, 146 S. Ct. 2648 (2026) ..... 12
*Barber v. Bryant*, 860 F.3d 345 (5th Cir. 2017) ..... 13
*Bay Area Unitarian Universalist Church v. Ogg*, 185 F.4th 523 (5th Cir. 2026) (en banc) ..... 13
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..... 3
*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ..... 9, 11
*Crane v. Johnson*, 783 F.3d 244 (5th Cir. 2015) ..... 3, 10, 11
*Cross v. Formativ Health Mgmt., Inc.*, 439 F. Supp. 3d 616 (E.D.N.C. 2020) ..... 15
*Eli Lilly & Co. v. Adonis Health, Inc.*, No. 25-cv-03536-JST, 2025 WL 2721684 (N.D. Cal. Sept. 24, 2025) ..... 17, 18
*Eli Lilly & Co. v. Empower Clinic Servs., LLC*, No. H-25-3464, 2026 WL 1162765 (S.D. Tex. Apr. 29, 2026) ..... 8, 17, 18, 20
*Eli Lilly & Co. v. Mochi Health Corp.*, No. 25-cv-03534-JSC, 2025 WL 2998166 (N.D. Cal. Oct. 24, 2025) ..... 17
*Eli Lilly & Co. v. Mochi Health Corp.*, No. 25-cv-03534-JSC, 2026 WL 1076831 (N.D. Cal. Apr. 20, 2026) ..... 18
*Eli Lilly & Co. v. Revive Rx, LLC*, 812 F. Supp. 3d 708 (S.D. Tex. 2025) ..... 8, 17, 18, 19, 20
*Eli Lilly & Co. v. Willow Health Servs., Inc.*, No. 2:25-cv-03570-AB-MAR, 2026 WL 639976 (C.D. Cal. Feb. 3, 2026) ..... 16, 17, 18
*Faulhaber v. Petzl Am., Inc.*, 656 F. Supp. 3d 1257 (D. Colo. 2023) ..... 14
*Fleming v. Janssen Pharms., Inc.*, 186 F. Supp. 3d 826 (W.D. Tenn. 2016) ..... 15, 19
*Ganim v. Smith & Wesson Corp.*, 258 Conn. 313, 780 A.2d 98 (2001) ..... 14
*Great Lakes Dredge & Dock Co. v. Magnus*, 128 F.4th 678 (5th Cir. 2025) ..... 12
*Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*, 403 S.C. 623, 743 S.E.2d 808 (2013) ..... 15
*Jones v. Westbrook*, 379 P.3d 963 (Alaska 2016) ..... 14
*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ..... 16
*Little v. KPMG LLP*, 575 F.3d 533 (5th Cir. 2009) ..... 3, 10, 11
*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ..... 13
*Montes v. SPARC Grp. LLC*, 6 Wash. 3d 321 (2026) ..... 15, 19
*Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488 (5th Cir. 2024) ..... 12
*Novo Nordisk Inc. v. Axtell's Rite-Value Pharmacy, Inc.*, No. 4:25-cv-837-JDK, 2026 WL 1684178 (E.D. Tex. June 10, 2026) ..... 11
*Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502 (4th Cir. 1992) ..... 15, 19
*Patrick v. Wal-Mart, Inc.-Store No. 155*, 681 F.3d 614 (5th Cir. 2012) ..... 3
*Perry v. Am. Tobacco Co.*, 324 F.3d 845 (6th Cir. 2003) ..... 16
*Peters v. St. Joseph Svcs. Corp.*, 74 F. Supp. 3d 847 (S.D. Tex. 2015) ..... 10, 11, 12

*Precision Links Inc. v. USA Prods. Grp., Inc.*, No. 3:08-cv-576, 2009 WL 801781 (W.D.N.C. Mar. 25, 2009) .......... 19
*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) .......... 3, 9
*Schoellkopf v. Pledger*, 778 S.W.2d 897 (Tex. App.—Dallas 1989, writ denied) .......... 20
*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) .......... 11
*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .......... 3, 9, 13
*Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465 (5th Cir. 2000) .......... 20
*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 13
*ViroPharma, Inc. v. Hamburg*, 777 F. Supp. 2d 140 (D.D.C. 2011) .......... 12
*ViroPharma, Inc. v. Hamburg*, No. 11-5143 (D.C. Cir. Mar. 21, 2012) (unpublished affirmance) .......... 12
*Wright v. Craft*, 372 S.C. 1, 640 S.E.2d 486 (S.C. Ct. App. 2006) .......... 15

**Constitutional Provisions**

U.S. Const. art. III .......... 1, 2, 3, 7, 8, 9, 10, 12, 14, 17, 20

**Statutes**

Alaska Stat. § 45.50.471 .......... 14
Alaska Stat. § 45.50.531(a) .......... 14
S.C. Code Ann. § 39-5-140(a) .......... 15
Tex. Health & Safety Code Ann. § 431.114(a) .......... 7, 19

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 1, 3, 10, 20
Fed. R. Civ. P. 12(b)(6) .......... 1, 3, 14, 20

**Other Authorities**

Lilly Medical, Is There an Expanded Access Program for Retatrutide? (reviewed Aug. 26, 2026) .......... 4
Trustpilot, Eli Lilly and Company (last visited Oct. 20, 2026) .......... 6
u/Academic_Swan7506, Reddit, Since Lilly Has Cited Reddit Posts in Cases… (last visited Oct. 20, 2026) .......... 6

## I. NATURE AND STAGE OF THE PROCEEDING

Plaintiff Eli Lilly and Company ("Lilly") filed this diversity action on August 12, 2026. *See generally*, Doc. 1 (“Compl.”). The Complaint asserts no federal cause of action. *See id.* Instead, Lilly asserts eight state-law claims based on Defendant Striker Pharmacy, LLC's ("Striker") alleged compounding and sale of products containing or purporting to contain retatrutide, which include consumer-protection or unfair trade practices statutes under the laws of Alaska, Colorado, Connecticut, North Carolina, South Carolina, Tennessee, and Washington (Counts 1-6 and 8), and a Texas common law unfair competition claim (Count 7). Compl. ¶¶ 73-137. Striker moves to dismiss all eight counts under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), because (1) Lilly lacks Article III standing, (2) Counts 1-6 and 8 fail because Lilly has not pleaded a loss proximately caused by Striker, and (3) Count 7 fails because Texas common law does not permit Lilly to privately enforce the Texas Food, Drug, and Cosmetic Act through an unfair competition claim, as two courts have already held in Lilly’s own cases.

According to its Complaint, Lilly has no commercially approved retatrutide product. Lilly “has not finished its clinical trials or submitted a final data package to FDA,” and “FDA has not approved it.” Compl. ¶ 4. Its investigational drug application “does not permit general commercial distribution or sale of the investigational drug to consumers.” Id. ¶ 36. Lilly alleges: “Retatrutide cannot legally be sold for human use to anyone, anywhere, for any reason.” *Id.* ¶ 1.

Lilly nonetheless filed this lawsuit, and several others, challenging alleged sales of retatrutide as “unfair competition” because Striker is “target[ing] the same consumer pool,” presumably referring to consumers that desire to lose weight. Compl. ¶ 66. That description also encompasses sellers of dietary supplements and other weight-loss products. Striker submits that a

common interest in weight loss, without facts showing displaced Lilly purchases, does not establish the market overlap or injury required here.

Regulatory history and third-party consumer reports do not themselves identify a loss suffered by Lilly from a Striker transaction. The Complaint describes drug approval, compounding, other sellers, FDA warning letters, and adverse-event reports not tied to Striker. Compl. ¶¶ 17–28, 38–42, 46–48. Lilly claims "lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers." *Id.* ¶¶ 79, 87, 95, 103, 111, 119, 127, 136. Article III and proximate causation require the pleading to connect Striker's conduct to Lilly's own loss.

The alleged products and purchasing decisions do not establish that connection. Lilly's approved medicines—Mounjaro, Zepbound, and Foundayo—contain tirzepatide or orforglipron. Compl. ¶¶ 31–32. A displaced Lilly sale would require a consumer to seek treatment, qualify for a Lilly medicine, receive a prescription selecting that medicine over alternatives, and choose Striker's product instead because of Striker's conduct. The Complaint identifies no consumer who followed that path. A Striker sale is not, without more, a lost Lilly sale. Lilly therefore has not pleaded the concrete, traceable injury Article III requires or the proximately caused loss required by the state statutes. Count 7 also fails because the alleged Texas FDCA violation cannot support Lilly's common-law unfair-competition claim, as two courts have held in Lilly's own cases.

## II. ISSUES PRESENTED AND STANDARD OF REVIEW

1. Whether Lilly has Article III standing where its alleged injuries depend on future regulatory approval, possible adverse events and consumer attribution, or independent prescribing and purchasing decisions, without identifying a Striker customer whose purchase displaced a Lilly sale. Compl. ¶¶ 65–69.

2. Whether Counts 1–6 and 8 fail under Rule 12(b)(6) because Lilly has not plausibly pleaded its own economic loss proximately caused by Striker.

3. Whether Count 7 fails with prejudice because an alleged Texas FDCA violation cannot support Lilly's common-law unfair-competition claim.

**Governing Standard.** Federal Rule of Civil Procedure 12(b)(1) permits dismissal for lack of subject-matter jurisdiction, including lack of Article III standing. *Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015) (affirming Rule 12(b)(1) dismissal where claim of injury was "not supported by any facts" and therefore "purely speculative"). The party invoking federal jurisdiction bears the burden of establishing it. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). At the pleading stage, "the plaintiff must clearly . . . allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation and internal quotation marks omitted). Although courts construe allegations of injury liberally, "allegations of injury that is merely conjectural or hypothetical do not suffice to confer standing." *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).

Rule 12(b)(6) requires dismissal when a complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court accepts well-pleaded factual allegations as true, but it need not accept legal conclusions couched as facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To be plausible, the allegations must contain sufficient facts to allow the reasonable inference that the defendant is liable for the injury for which the plaintiff seeks relief. *Patrick v. Wal-Mart, Inc.-Store No. 155*, 681 F.3d 614, 622 (5th Cir. 2012).

## III. SUMMARY OF ALLEGATIONS[1]

### A. Lilly sells different molecules; it does not sell retatrutide.

Lilly's approved medicines contain tirzepatide (Mounjaro and Zepbound) or orforglipron (Foundayo), not retatrutide. Compl. ¶¶ 31–33. Mounjaro treats type 2 diabetes; Zepbound treats chronic weight management and obstructive sleep apnea in specified adult populations. *Id.* ¶ 31. Foundayo is a once-daily pill approved in April 2026 for obesity, or overweight patients with at least one weight-related comorbid condition. *Id.* ¶ 32.

Retatrutide is a triple-receptor agonist that Lilly is still studying in Phase 3 clinical trials. Compl. ¶ 34. Lilly's investigational new drug application "does not permit general commercial distribution or sale of the investigational drug to consumers." *Id.* ¶ 36. Lilly has not finished its trials or submitted its final data package, and no regulatory agency has approved a retatrutide medicine. *Id.* ¶¶ 4, 37, 61. Lilly alleges that "no drug containing retatrutide—whether compounded or not—may be sold to consumers. Period." *Id.* ¶ 4. It describes a "future retatrutide medicine, if approved." *Id.* ¶ 67.[2]

### B. Lilly describes a broader retatrutide market in which Striker is one alleged participant.

Striker is a compounding pharmacy. Compl. ¶ 1. Compounding mixes or alters ingredients to tailor a medication to a patient. *Id.* ¶ 26. Lilly alleges that compounded drugs are not FDA

---

[1] The allegations are taken from the Complaint and are accepted as true only for purposes of this motion.

[2] Lilly alleges that retatrutide "cannot legally be sold for human use to anyone, anywhere, for any reason," and that Striker's allegedly unapproved products pose safety risks. Compl. ¶¶ 1, 3–4, 7, 10. Lilly nevertheless makes investigational retatrutide available at no cost through a physician-managed expanded-access program for eligible patients, subject to patient-specific IND and IRB requirements. See Lilly Medical, Is there an expanded access program for retatrutide? (reviewed Aug. 26, 2026), https://medical.lilly.com/us/products/answers/is-there-an-expanded-access-program-for-retatrutide-416668 (last visited Oct. 30, 2026).

approved and are not subject to the clinical-trial, manufacturing, and pharmacovigilance requirements applicable to approved medicines. *Id.* ¶¶ 25, 27.

Lilly alleges that a "black market" for retatrutide includes compounding pharmacies, "research use only" peptide suppliers, and med spas, with products often sourced from unknown foreign suppliers. *Id.* ¶¶ 38–39. It cites FDA warning letters to sellers and adverse-event reports from online users of retatrutide obtained from unregulated sources. *Id.* ¶¶ 42, 46–48. The Complaint does not identify an FDA warning letter to Striker or connect those online adverse-event reports to a Striker product.

**C. Lilly's diversion examples concern unidentified third parties.**

Lilly alleges that some consumers choose illegal retatrutide products over its FDA-approved medicines because of lower cost and perceived superior efficacy. Compl. ¶ 65.

Its examples are two Reddit posts: one user reported that ten 20-mg units of retatrutide cost about half as much as a single 7.5-mg Mounjaro pen; another, who had lost 169 pounds on tirzepatide, asked whether "switching over to reta" would help reach her remaining goal. *Id.* ¶ *65 & nn.47–48.* ***Lilly does not allege that either user bought from Striker, saw a Striker statement, or would have purchased a Lilly medicine but for Striker***.

**D. Lilly's Striker-specific allegations concern its website, sales, and reviews.**

Lilly alleges that Striker's website does not list retatrutide, but advertises customized patient-specific compounds, describes Striker as a licensed 503A pharmacy "specializing in weight loss and wellness," and states that its ingredients come from FDA-registered suppliers. Compl. ¶¶ 50–51. Lilly alleges that these statements imply FDA approval. *Id.* ¶ 51. The website directs patients to have their doctors contact Striker. *Id.* ¶ 52. Lilly does not identify a Striker statement comparing retatrutide's cost or efficacy with Lilly's medicines.

Lilly alleges that Striker compounds and sells retatrutide to medical spas and other providers, and that the products are shipped to consumers or administered at clinics. Compl. ¶ 53. It provides photographs of vials bearing Striker's name and a pricing list identifying retatrutide, *and* quotes two reviews linking Striker to retatrutide supplied through providers. *Id.* ¶¶ 53–54. Other reviews describe direct deliveries and complaints about quantity, packaging, effectiveness, purity, and concentration. *Id.* ¶¶ 55–56.3

**E. Lilly alleges diversion without identifying a displaced Lilly purchase in the quoted reviews.**

Lilly alleges that "[s]cores of people seeking obesity-management treatment have been persuaded to purchase Striker Pharmacy's products, as evidenced by consumer testimonials." Compl. ¶ 66. Yet, the quoted Striker-specific reviews do not state that a reviewer sought a Lilly medicine, abandoned one because of Striker, or otherwise would have purchased one. *See id.* ¶¶ 54–56, 66.

Lilly alleges, without any factual support, that the companies "market and sell products to the same potential customers," that their products "target the same consumer pool," and that Striker's sales are "costing Lilly sales." *Id.* ¶ 66.

**F. Lilly also alleges harm to its future product, reputation, and competitive position.**

Lilly alleges that black-market retatrutide is "poisoning the well" for its "future retatrutide medicine, if approved." *Compl.* ¶ 67. It also alleges, "[o]n information and belief," that consumers

---

[3] For comparison, consumers give Lilly an average of 1.3 stars, similarly complaining of defective products and unhelpful customer support. *See, e.g.*, Trustpilot – Eli Lilly and Company, https://www.trustpilot.com/review/lilly.com (last visited Oct. 20, 2026); *see also* u/Academic_Swan7506, Reddit (r/tirzepatidecompound), "Since Lilly has cited Reddit posts in cases…," https://www.reddit.com/r/tirzepatidecompound/comments/1snt5jh/since_lilly_has_cited_reddit_posts_in_cases/ (last visited Oct. 20, 2026).

experiencing adverse effects from Striker's products are likely to attribute them to retatrutide or Lilly. *Id.* ¶ 69. Each count alleges "lost sales, damage to goodwill, harm to Lilly's competitive position, and diversion of consumers to unapproved and potentially unsafe products." *Id.* ¶¶ 79, 87, 95, 103, 111, 119, 127, 136.

### G. Lilly asserts eight state-law claims.

Counts 1-6 and 8 invoke consumer-protection or unfair-trade-practices statutes in Alaska, Colorado, Connecticut, North Carolina, South Carolina, Tennessee, and Washington. Compl. ¶¶ 73-120, 130-137. Each count predicates the alleged unfair practice on a separate state-law prohibition against selling an unapproved "new drug." *Id.* Count 7 alleges that Striker's asserted violation of Texas Health and Safety Code § 431.114(a) "constitutes common law unfair competition under Texas law." *Id.* ¶ 126. Lilly seeks declaratory and injunctive relief, damages, disgorgement, attorneys' fees, and other relief. Prayer ¶¶ 1-7.

## IV. SUMMARY OF ARGUMENT

Lilly's Complaint rests on a disconnect between the conduct it alleges and the injury Article III and the asserted state-law causes of action require. Per the Complaint, Lilly does not sell retatrutide, and on its own allegations, it cannot. Lilly identifies no Striker customer whose purchase deprived Lilly of a sale of Mounjaro, Zepbound, Foundayo, or any other Lilly medicine. Instead, Lilly relies on anonymous internet discussions concerning retatrutide generally and then assumes that, because Striker and Lilly allegedly target the same broad population of persons interested in obesity treatment, Striker's sales "are costing Lilly sales"—just as any other weight loss treatment, dietary supplement, or other weight-loss medicine could theoretically "cost[] Lilly [a] sale[]" depending on the specific consumer and their physicians' choices. Compl. ¶¶ 65-66. But Article III does not permit traceability to rest on such an attenuated chain of conjecture

concerning unidentified consumers, prescribers, alternative treatments, and numerous other retatrutide sellers. Put simply, Lilly skips over the extensive number of independent choices that would have to occur before reaching the conclusion that even one of those consumers allegedly cost Lilly a single sale, much less that all of the consumers would have acted the same, such that Lilly is entitled to the relief it seeks. Put simply, without more, there is no factual basis to conclude that a Striker sale is a lost Lilly sale.

Lilly's remaining theories of injury are even more speculative. Its alleged injury to retatrutide concerns a “future retatrutide medicine, if approved”—a product that Lilly cannot currently sell and whose commercial existence depends on completion of clinical development, FDA approval, and a future launch. Compl. ¶ 67. That “if” kills this theory upon arrival. The analysis should stop at the speculation as to whether or not it might be approved in the future.

The reputational theory assumes adverse effects and consumers’ later attribution of them to retatrutide or Lilly, damaging Lilly’s brand, products, or pipeline. Compl. ¶ 69. The Complaint supplies no Striker-specific event establishing that causal sequence. Neither theory pleads a concrete, actual or imminent, fairly traceable injury.

Counts 1–6 and 8 independently require Lilly’s own economic injury caused by Striker’s conduct. Lilly alleges no transaction establishing that a customer otherwise would have qualified for, sought, been prescribed, and purchased a Lilly medicine. The same missing causal links defeat the state claims.

Count 7 also fails because Texas does not recognize the asserted common-law unfair-competition claim predicated on an alleged Texas FDCA violation.[4]

---

[4] See *Eli Lilly & Co. v. Revive Rx, LLC*, 812 F. Supp. 3d 708, 726–29 (S.D. Tex. 2025); *Eli Lilly & Co. v. Empower Clinic Servs., LLC*, No. H-25-3464, ECF No. 80, at 28–34 (S.D. Tex. Apr. 29, 2026).

Finally, Lilly's requested remedies extend beyond both its pleaded injuries and its causes of action. Lilly’s request for profits fails with any dismissed supporting claim; any surviving request must be authorized by the governing state law and remains subject to that law’s remedial limits. The Complaint thus asks the Court not merely to compensate Lilly for an injury it has not suffered, but effectively to place Lilly in the position of a private nationwide regulator of retatrutide. The pleaded claims and Article III do not permit that result. Lilly's claims and requests for relief should therefore be dismissed as set forth below.

## V. ARGUMENT

A single unsupported assumption drives Lilly’s entire case: that Striker’s alleged retatrutide sales establish injury to Lilly, even though Lilly has no commercially available retatrutide medicine and has not plausibly connected Striker’s conduct to its own legally cognizable harm. First, Lilly’s allegations fail to establish Article III standing because none of Lilly’s three theories of injury are concrete, actual or imminent, and traceable to Striker. Second, the allegations fail on the merits because the Complaint cannot satisfy the requirement under each state law cause of action that a plaintiff’s own economic loss was caused by the defendant. Third, Lilly’s claim brought under Texas common law fails because Texas does not recognize a common law unfair competition claim built on a violation of the Texas Food, Drug, and Cosmetic Act. Finally, Lilly’s profits demand fails with its supporting claims, and any surviving request cannot satisfy the governing state law’s remedial requirements. Lilly also has not adequately alleged the threatened injury

necessary for prospective injunctive relief, nor is its request for injunctive relief sought limited to the injury and state-law violation supporting it.

**A. Lilly lacks Article III standing.**

Article III requires Lilly to plead an injury that is "concrete, particularized and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted).[5] A "concrete injury . . . must actually exist." *Spokeo*, 578 U.S. at 340 (citation omitted). A "threatened injury must be certainly impending to constitute injury in fact," and a theory that "relies on a highly attenuated chain of possibilities" does not qualify. *Clapper*, 568 U.S. at 409-10. The Complaint pleads three theories of injury. First, Lilly alleges that it lost sales of *other* drugs to consumers who bought retatrutide instead. Compl. ¶ 8, 65-66. Second, Lilly alleges future harm regarding a product market that does not yet exist. *Id.* ¶¶ 9, 67-68. And third, Lilly alleges reputational harm, pleaded on information and belief, that turns on how consumers might react *if* they suffer adverse events from retatrutide, a product that Lilly elsewhere says "cannot legally be sold for human use to anyone, anywhere, for any reason." *Id.* ¶¶ 1, 4–5, 69–70. None is a cognizable Article III injury.

1. **<u>Lilly's diversion theory of injury is speculative and unsupported.</u>**

Lilly claims that it suffered injury because some consumers who may have been prescribed Mounjaro, Zepbound, or Foundayo may have been prescribed Striker retatrutide by medical spas or other providers instead. Compl. ¶¶ 53 (pleading on information and belief that Striker sells retatrutide to medical spas and other providers who prescribe them to consumers), 65-66 (relying on anonymous consumer posts to allege that some consumers are choosing some unidentified

---

[5] Because the Article III defect is jurisdictional, the Court should address it first. *Ramming*, 281 F.3d at 161.

sellers of retatrutide instead of Lilly's products—but not alleging that they bought a Striker product). Yet, the Complaint identifies no Striker customer who would have bought a Lilly medicine, qualified for one, sought treatment from a prescriber who otherwise would have prescribed one, or would have purchased Mounjaro, Zepbound, or Foundayo but for Striker. Its diversion examples are anonymous Reddit users who have no connection to Striker. *Id.* ¶ 65. That theory, dependent on several layers of third-party decisions, is too speculative to plead an injury traceable to Striker. *See Little*, 575 F.3d at 540; *Crane*, 783 F.3d at 252; *Peters v. St. Joseph Svcs. Corp.*, 74 F. Supp. 3d 847, 854 (S.D. Tex. 2015) (Hoyt, J.).

Obtaining one of Lilly's medicines requires prescribing and purchasing decisions by persons who are not parties here. "A claim of injury generally is too conjectural or hypothetical to confer standing when the injury's existence depends on the decisions of third parties not before the court." *Little*, 575 F.3d at 540. Here, none of the doctors, prescribers, medical spas, or other third parties in the chain are before this Court. In *Little*, competing accounting firms claimed that KPMG's licensing problem had cost them business. *Id.* at 535. The Fifth Circuit held that the competitors' "claim of injury depends on several layers of decisions by third parties[,]" specifically whether KPMG's clients would have taken their business to the plaintiffs, followed their accountants to another firm, or whether, facing such a crisis, KPMG would have quickly remedied the licensure issue. *Id.* at 540–41. Those unresolved customer choices made the alleged lost business "too speculative to confer Article III standing," and the Fifth Circuit affirmed dismissal under Rule 12(b)(1). *Id.* at 541; *see also Crane*, 783 F.3d at 251-52 (alleging generally that illegal immigration, as opposed to a specific program, is costing the state money is "purely speculative because there was no concrete evidence that Mississippi's costs had increased or will increase as a result of DACA.").

The prescriber and patient decisions alleged here leave additional uncertainty about a displaced Lilly purchase. *See Little*, 575 F.3d at 541. The consumer must seek treatment and qualify for a Lilly medicine; the prescriber must select it over alternatives; and the patient must afford and choose it rather than another treatment or seller. Compl. ¶¶ 30–32, 42, 53, 65. Lilly's theory thus "relies on a highly attenuated chain of possibilities." *Clapper*, 568 U.S. at 410. See also *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42–45 (1976); *Peters*, 74 F. Supp. 3d at 854 (quoting *Clapper*, 133 S. Ct. at 1148). This cannot confer standing.

Neither Reddit example identifies a Striker purchase, and alleging numerous Striker buyers does not identify a forgone Lilly prescription. Compl. ¶¶ 65–66. An economic injury "not supported by any facts" is "purely speculative." *Crane*, 783 F.3d at 252. *See also Simon*, 426 U.S. at 45 (finding no standing where "[s]peculative inferences are necessary to connect [Plaintiffs'] injury to the challenged actions of [Defendants]").

Even drawing reasonable inferences in Lilly's favor, the Complaint leaves the critical causal connection unsupported. The anonymous accounts suggest that some consumers regard retatrutide as an alternative to Lilly's medicines, but they do not identify Striker as the seller. The Striker-specific reviews, in turn, do not describe a purchaser forgoing a Lilly prescription. Compl. ¶¶ 54–56, 65–66. Combining those separate allegations still requires an unsupported assumption that a Striker purchaser would otherwise have obtained and purchased a Lilly medicine. The deficiency is the absence of facts supporting that causal connection, not merely the absence of a customer identified by name. Those unresolved prescribing and purchasing choices leave the asserted lost sale speculative. *See Little*, 575 F.3d at 540–41.[6]

---

[6] In *Novo Nordisk Inc. v. Axtell's Rite-Value Pharmacy, Inc.*, the challenged compounded products contained semaglutide, the active ingredient in Novo's approved medicines. The court relied on allegations that the defendant's "drugs are essentially copies of Novo Nordisk's semaglutide

2. **<u>Harm to a future product is neither actual nor imminent.</u>**

Lilly's alleged injury to its "future retatrutide medicine, if approved," presupposes a commercial launch following successful development and regulatory review. Compl. ¶¶ 4, 9, 67–68. Striker submits that the Complaint does not establish when those conditions will occur. The theory also depends on future consumer and prescriber choices. *Id.* ¶¶ 4, 37, 67–68. *See Peters*, 74 F. Supp. 3d at 854 (dismissing case where plaintiff relied on future events happening to create harm: "Unless and until these conjectures come true, [plaintiff's] alleged future injuries are speculative—even hypothetical—but certainly not imminent."). Those contingencies do not establish actual or imminent harm. *Id.*

The cited regulatory decisions likewise evaluate whether contingent developments establish present or impending harm. That is because "[t]he fact that the word 'if' is required to describe" the alleged injury showed that it was "neither actual nor certainly impending." *AstraZeneca Pharms. LP v. Becerra*, 719 F. Supp. 3d 377, 388 (D. Del. 2024), aff'd sub nom. *AstraZeneca Pharms. LP v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 116 (3d Cir. 2025), cert. denied sub nom. *AstraZeneca Pharms. LP v. Kennedy*, 146 S. Ct. 2648 (2026); *ViroPharma, Inc. v. Hamburg*, 777 F. Supp. 2d 140, 145–46 (D.D.C. 2011), aff'd, No. 11-5143 (D.C. Cir. Mar. 21, 2012) (holding plaintiff did not have standing where theory depended on FDA's later approval of generic drug); *see also Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 499 (5th Cir. 2024) (stating that when a future regulatory approval is speculative "the standing analysis must proceed based on the status quo").

---

drugs" and Novo "is the only company selling FDA-approved semaglutide drugs." No. 4:25-cv-837-JDK, 2026 WL 1684178, at *3 (E.D. Tex. June 10, 2026). "Thus," the court was able to conclude that the defendant's sales "would and will have been made by Novo Nordisk." *Id.* Here, Lilly has no commercially approved retatrutide product. Compl. ¶¶ 4, 36–37.

Lilly has no commercially available retatrutide medicine. Compl. ¶¶ 4, 36-37. Harm to a market Lilly may someday enter is necessarily harm "down the road"—not an Article III injury. *See Great Lakes Dredge & Dock Co. v. Magnus*, 128 F.4th 678, 682 (5th Cir. 2025) ("It is not enough to say that lifting a regulatory barrier may potentially allow more competition down the road."); *Peters*, 74 F. Supp. 3d at 854. Imminence, moreover, "has been stretched beyond the breaking point when . . . the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992). Here, Lilly places the injury "[b]y the time Lilly brings its FDA-approved retatrutide medicine to market." Compl. ¶ 9. Lilly must still complete development and seek approval before the hypothesized launch. *Id.* ¶ 4. The pleading does not establish an imminent launch-related loss.

3. **<u>The alleged attribution of adverse events to Lilly remains speculative.</u>**

Paragraph 69 alleges, on information and belief, that "*if* consumers experience adverse effects from Striker Pharmacy's illegal products, they are likely to attribute those harms to retatrutide or to Lilly." Compl. ¶ 69 (emphasis added). The allegation assumes that a consumer experiences an adverse effect and attributes it to Lilly. Striker submits that the Complaint supplies no Striker-specific event supporting that inference. Its cited adverse-event accounts are not linked to Striker. *Id.* ¶¶ 46–48, 65. The Complaint also does not allege that Lilly's name appears on a Striker product.

The asserted path to reputational harm requires an adverse event, a judgment that the product caused it, and attribution of the event to Lilly. An injury built on a "speculative chain of possibilities" does not confer standing. *Barber v. Bryant*, 860 F.3d 345, 357 (5th Cir. 2017). And a claim of reputational harm "based on a few adverse customer reviews, utterly fails to bear a

'"close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts—namely, the reputational harm associated with the tort of defamation.'" *Bay Area Unitarian Universalist Church v. Ogg*, 185 F.4th 523, 536 (5th Cir. 2026) (en banc) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021)). To the extent Lilly relies on goodwill in a future retatrutide medicine, that product does not yet exist commercially. Harm to the goodwill of a "future retatrutide medicine, if approved," Compl. ¶ 67, is not an injury that "actually exist[s]." *Spokeo*, 578 U.S. at 340.

**B. Counts 1-6 and 8 fail because Lilly does not plausibly plead an actual loss proximately caused by Striker.**

**1. <u>Each statute requires Lilly's own actual or ascertainable loss caused by Striker.</u>**

Even if Lilly's allegations clear Article III's threshold, Counts 1-6 and 8 fail under Rule 12(b)(6). Each statute Lilly invokes requires an actual loss proximately caused by the defendant's conduct, and most require a tangible loss of money or property:

**Alaska (Count 1).** A private plaintiff seeking damages under the Alaska Unfair Trade Practices and Consumer Protection Act must plead "an ascertainable loss of money or property as a result of another person's act or practice declared unlawful by AS 45.50.471." Alaska Stat. § 45.50.531(a); *see Jones v. Westbrook*, 379 P.3d 963, 970 (Alaska 2016) (finding plaintiff had not yet experienced an "ascertainable loss of money or property" when he had "suffered only the threat of future damage"). As noted above, Lilly cannot plausibly allege any such loss.

**Colorado (Count 2).** A Colorado Consumer Protection Act "plaintiff must allege . . . [t]he plaintiff suffered an injury to a legally protected interest; and . . . [t]he allegedly unfair or deceptive trade practice caused the injury." *Faulhaber v. Petzl Am., Inc.*, 656 F. Supp. 3d 1257, 1266 (D. Colo. 2023). As noted, Lilly does not (and cannot) identify any current protectible interest or actual injury caused by Striker.

**Connecticut (Count 3).** A claim for violation of the Connecticut Unfair Trade Practices Act ("CUTPA") requires "an ascertainable loss of money or property as a result of the defendant's acts or practices." *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 217, 947 A.2d 320, 329 (2008). "The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief . . . ." *Id.* **at 217–18**, 947 A.2d at **329–30** (internal quotation marks omitted). And a CUTPA plaintiff lacks standing when its injury is "remote, indirect or derivative." *Ganim v. Smith & Wesson Corp.*, 258 Conn. 313, 344, 780 A.2d 98, 118 (2001). Again, this claim fails at the threshold.

**North Carolina (Count 4).** "[A] plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Cross v. Formativ Health Mgmt., Inc.*, 439 F. Supp. 3d 616, 623 (E.D.N.C. 2020). Lilly has not and cannot allege causation for any such claim.

**South Carolina (Count 5).** The plaintiff must have "suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*, 403 S.C. 623, 638, 743 S.E.2d 808, 816 (2013) (quoting *Wright v. Craft*, 372 S.C. 1, 23, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006)**)**. South Carolina limits recovery to the plaintiff's own "actual damages," and a plaintiff "cannot piggyback on injuries suffered by others." *Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 507 (4th Cir. 1992) (citing S.C. Code Ann. § 39-5-140(a)).

**Tennessee (Count 6).** The Tennessee Consumer Protection Act ("TCPA") requires an "ascertainable loss . . . as a result of . . . an unfair or deceptive act or practice" that is "more than trivial or speculative." *Fleming v. Janssen Pharms., Inc.*, 186 F. Supp. 3d 826, 834 (W.D. Tenn.

2016) (citations omitted) (dismissing TCPA claim because economic damages alleged were "speculative"). Any alleged injury suffered by Lilly is at bottom speculative.

**Washington (Count 8).** The Washington Consumer Protection Act ("WCPA") requires injury to "business or property," which "must be an economic loss." *Montes v. SPARC Grp. LLC*, 6 Wash. 3d 321, 331, 338 (2026) (holding plaintiff did not allege "a cognizable [W]CPA injury in her business or property because she [did] not allege an objective economic loss"). The WCPA also requires "a causal link between the unfair or deceptive act and the injury." *Id.* at 330. Lilly has not and cannot allege any loss it suffered by any conduct of Striker.

Lilly's identical, formulaic injury paragraph in each count cannot substitute for these requirements. Compl. ¶¶ 79, 87, 95, 103, 111, 119, 136. The Court must test whether the facts alleged make it plausible that Striker caused Lilly an actual economic loss. They do not.

**2. Sales of a different molecule do not plausibly establish a direct, proximately caused loss of Lilly sales.**

The diversion theory reaches Lilly, if at all, only through the choices of consumers, prescribers, and other sellers. *See* Section V.A.1. Whatever the Court makes of that chain for purposes of traceability, it defeats proximate cause. As the Supreme Court has explained, "[b]usinesses lose and gain customers for many reasons," and a plaintiff "cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459–60 (2006). "Proximate causation may be adequately alleged when 'there is likely to be something very close to a 1:1 relationship between' a plaintiff's lost sales and the sales diverted to a defendant." *Eli Lilly & Co. v. Willow Health Servs., Inc.*, No. 2:25-cv-03570-AB-MAR, 2026 WL 639976, at *7 (C.D. Cal. Feb. 3, 2026) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 139 (2014)).

The same direct-injury requirement governs each state statute Lilly invokes. *See supra* Section V.B.1; *see also Perry v. Am. Tobacco Co.*, 324 F.3d 845, 850–51 (6th Cir. 2003) (affirming dismissal of Tennessee Consumer Protection Act claim for lack of standing because plaintiffs could not establish proximate cause); *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 706 (9th Cir. 2001) (affirming dismissal of Washington Consumer Protection Act claim for lack of proximate cause).

A retatrutide purchase cannot replace a commercial retatrutide purchase from Lilly because Lilly sells no such product. Compl. ¶¶ 4, 36–37. Any alleged displacement of Lilly's other medicines requires the additional causal showing discussed above.

The tirzepatide decisions concern products containing the active ingredient in Lilly's existing medicines. Revive and Empower recount Lilly's allegations that "sales made by [the defendant] of its compounded tirzepatide products would have been made by Lilly." *Revive*, 812 F. Supp. 3d at 728 (quoting complaint); *Empower*, 2026 WL 1162765, at *8 (same). Willow nevertheless found the pleaded causal link insufficient. In *Willow Health*, Lilly alleged that it and the defendant "compete for consumers seeking tirzepatide-based weight-loss treatments." 2026 WL 639976, at *3. The court nonetheless dismissed with prejudice, because Lilly pleaded no "1:1 relationship, or anything approaching it, between lost sales and sales diverted to Willow," and because "[t]he physician's prescribing decision, not Willow's advertisements, is the proximate cause of the patient using the compounded medication instead of Lilly's product." *Id.* at *7–8; *see also Eli Lilly & Co. v. Mochi Health Corp.*, No. 25-cv-03534-JSC, 2025 WL 2998166, at *3 (N.D. Cal. Oct. 24, 2025) (dismissing for lack of Article III standing where Lilly's claimed reputational injury from compounded tirzepatide rested on "this lone internet post by an unidentified individual").

*Adonis* and the amended *Mochi* decision accepted allegations connecting competing tirzepatide products and marketing to Lilly's claimed harm. In *Adonis Health*, the court sustained Lilly's Lanham Act standing because the defendant and Lilly both "market and sell tirzepatide-containing drugs . . . to the same potential customers," and Lilly alleged a market for "tirzepatide-containing medications used for weight loss, a significantly narrower segment of the market." *Eli Lilly & Co. v. Adonis Health, Inc.*, No. 25-cv-03536-JST, 2025 WL 2721684, at *3–4 (N.D. Cal. Sept. 24, 2025). On Lilly's amended complaint in *Mochi*, the court likewise found proximate cause because the parties' tirzepatide products "can be sold side-by-side to the same consumer base," and it declined to follow *Willow Health*'s prescriber reasoning in part because, "[s]ince both products at issue contain tirzepatide, it is a reasonable inference that a consumer would have some basis for asking her physician to prescribe a specific medication." *Eli Lilly & Co. v. Mochi Health Corp.*, No. 25-cv-03534-JSC, 2026 WL 1076831, at *11, *12 n.3 (N.D. Cal. Apr. 20, 2026). Striker submits that the allegations here do not supply the same connection to a Lilly product. Lilly has no commercial retatrutide medicine. Compl. ¶¶ 4, 36–37. The Complaint quotes no Striker statement naming Lilly or its medicines. Id. ¶¶ 49–53, 58. A physician cannot prescribe a Lilly retatrutide medicine that is not commercially available.[7]

The pleaded market includes numerous retatrutide sellers. Compl. ¶¶ 10, 42. Lilly attributes purchasing choices to "illegal sellers' claims of lower cost and perceived superior efficacy," but identifies no Striker claim of lower cost than Lilly's medicines or superior efficacy. Id. ¶ 65; see

---

[7] The state counts survived the particular scope, preemption, and exemption challenges presented in those cases; those rulings did not decide the state-law causation issue advanced here. *See Revive*, 812 F. Supp. 3d at 751; *Empower*, 2026 WL 1162765, at *19. Empower separately found the pleaded Lanham Act causal connection insufficient, finding no "1:1 relationship—or anything approaching it—between Empower's sales of tirzepatide medications and Lilly's lost sales." *Id.* at *8. Striker submits that the different active ingredients make the alleged connection more attenuated here.

id. ¶¶ 49–53, 58. Striker submits that allegations about the broader market do not establish that those claims prompted a Striker purchase.

The quoted Reddit users do not identify Striker, and the Complaint does not connect their purchasing decisions to a Striker transaction. Compl. ¶¶ 65–66. Alleging that "[s]cores of people" bought Striker's products does not identify a forgone Lilly prescription. *Id.* ¶ 66. Striker submits that the allegations that its sales "are costing Lilly sales" and caused "lost sales" add no supporting transactional facts. *Id.* ¶¶ 66, 79, 87, 95, 103, 111, 119, 136.

Alleged injuries to Striker's customers do not establish Lilly's own causally connected loss. See Compl. ¶¶ 64, 79, 87, 95, 103, 111, 119, 136. A plaintiff "cannot piggyback on injuries suffered by others" in bringing a consumer protection claim. *Omni*, 974 F.2d at 507.

**3. <u>Goodwill for a product that does not exist is not an actual loss.</u>**

To the extent Lilly seeks compensation for lost goodwill in a future retatrutide product, Striker submits that the alleged injury is too remote to establish proximate causation. *See supra* Section V.A.2–3. A federal court in North Carolina dismissed a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") on this ground, holding that the threat of future harm to goodwill does not establish actual injury. *See Precision Links Inc. v. USA Prods. Grp., Inc.*, No. 3:08-cv-576, 2009 WL 801781, at *3 (W.D.N.C. Mar. 25, 2009). "[T]he Complaint alleges that if the accused product malfunctions, the Plaintiff's goodwill will be tarnished and the Plaintiff may be exposed to product liability litigation. Such speculative allegations of possible harm in the future are simply insufficient to establish the actual injury necessary to support a claim under the UDTPA." *Id.* (emphasis in original*); see also Fleming*, 186 F. Supp. 3d at 834 (granting motion to dismiss Tennessee Consumer Protection Act claim because there was nothing in the record indicating plaintiff's economic damages); *Montes*, 6 Wash. 3d at 337 ("[D]isappointment

is not a cognizable [W]CPA injury.”). Striker submits that the hypothesized launch-related goodwill loss is likewise insufficiently pleaded.

### C. Count 7 fails because Texas common law does not permit Lilly to privately enforce the Texas Food, Drug, and Cosmetic Act through an unfair-competition claim.

Count 7 alleges that Striker’s sale of unapproved new drugs in violation of the Texas Food, Drug, and Cosmetic Act (“Texas FDCA”) “constitutes common law unfair competition under Texas law.” Compl. ¶ 126; see Tex. Health & Safety Code Ann. § 431.114(a). Revive and Empower rejected Lilly’s Texas FDCA predicate. *See Revive*, 812 F. Supp. 3d at 729; *Empower*, 2026 WL 1162765, at *14.[8] Striker asks the Court to apply that analysis to Count 7.

The claim also requires interference with Lilly’s business, which Striker submits is not plausibly alleged. The illegal act must have “interfered with the plaintiff’s ability to conduct its business,” *Taylor*, 216 F.3d at 486, and Lilly pleads no such interference. Count 7 should be dismissed with prejudice.

## VI. CONCLUSION

For the foregoing reasons, Striker respectfully requests that the Court grant its Motion and:

1. Dismiss this lawsuit under Rule 12(b)(1) for lack of Article III standing.

---

[8] Texas unfair competition requires an illegal act that is “at least . . . an independent tort.” *Taylor Publ’g Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000). “Without some finding of an independent substantive tort or other illegal conduct . . . liability cannot be premised on the tort of ‘unfair competition.’” *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904–05 (Tex. App.—Dallas 1989, writ denied). Revive examined whether the statutory enforcement scheme permitted Lilly to invoke the statute through common-law unfair competition and whether Lilly was among the persons the statute was designed to protect. *Revive*, 812 F. Supp. 3d at 726. Both prongs fail here. First, the Texas FDCA is “a comprehensive regulatory scheme” enforced by public officials through “a sliding scale of remedies,” and that structure “forecloses private enforcement through common-law unfair-competition torts.” *Id.* at 726–27. Second, the statute protects “patients from unsafe and ineffective drugs,” so Lilly “does not belong to the class of persons the statute was designed to protect.” *Id.* at 728.

2. If the Court concludes that Lilly has standing, dismiss Counts 1-6 and 8 under Rule 12(b)(6) because Lilly has not plausibly alleged an actual loss proximately caused by Striker's conduct, and dismiss Count 7 with prejudice because the alleged violation of the Texas Food, Drug, and Cosmetic Act cannot support Lilly's common-law unfair-competition claim.
3. Grant Striker all other relief to which it is justly entitled.

Dated: October 30, 2026

Respectfully submitted,
**WAGNER, LUDOWIG & WRIGHT, LLP**

/s/ Aaron A. Wagner
Aaron A. Wagner
Attorney-in-Charge
Texas Bar No. 24037655
S.D. Tex. Bar No. 3813191
2201 West Loop South, Suite 700
Houston, Texas 77027
Telephone: (360) 481-5107
Email: awagner@wlwlaw.com
*Counsel for Defendant Striker Pharmacy, LLC*

## CERTIFICATE OF SERVICE

I certify that on October 30, 2026, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system, which will serve all counsel of record who have consented to electronic service.

/s/ Aaron A. Wagner
Aaron A. Wagner